IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 29, 2006 Session

## RODNEY SHANE CURTIS v. CHRISTY SUZANNE HILL (CURTIS)

**Appeal from the Chancery Court for Lawrence County**
**No. 9982-00    Jim T. Hamilton, Chancellor**

---

**No. M2005-2230-COA-R3-CV - Filed on August 7, 2006**

---

This is a post-divorce change of custody case. The trial court changed custody of the parties' two minor children from the mother to the father. We hold that the evidence preponderates against the trial court's finding that there had been a material change of circumstances to justify a change in custody in the absence of proof that the mother's sexual indiscretions and other alleged misconduct had affected or would affect the children in an adverse way. We therefore reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;
Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL PICKENS FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

C. Tim Tisher, Columbia, Tennessee, for the Appellant, Christy Suzanne Hill (Curtis).

Paul A. Bates, Lawrenceburg, Tennessee, for the Appellee, Rodney Shane Curtis.

**OPINION**

*I. Background*

After seven and a half years of marriage, the parties were divorced in June of 2000. The parties' marital dissolution agreement, which was incorporated into the divorce decree, provided that Ms. Curtis was the primary residential parent of the parties' children: Baylee Dawn Curtis (born June 27, 1994) and Gracie Louise Curtis (born September 3, 1997). Mr. Curtis had shared parenting time one night per week and on alternate weekends.

Mr. Curtis filed a petition on June 27, 2005, alleging that a material change of circumstances had occurred and seeking custody of the children. Specifically, Mr. Curtis alleged that Ms. Curtis was living out of wedlock with her paramour, Jeff Kersteins; that prior to her cohabitation with Mr.

Kersteins, she had "cohabitated with two other paramours without the benefit of wedlock"; that Mr. Kersteins "verbally berates" the minor children; that Ms. Curtis had not fostered a positive father-daughter relationship between him and the children, and that she "does not attend church regularly and does not encourage the children spiritually." Ms. Curtis answered, denying a material change of circumstances had occurred, and filed a counter-petition asserting that Mr. Curtis's income had increased substantially and that she was entitled to an increase in child support.

Following a hearing at which the trial court heard the testimony of the parties, Mr. Curtis's sister, and the children *in camera*, the court entered an order concluding that a change of custody was warranted due to a material change of circumstances and stating as follows:

> [T]he Petition for Change of Primary Custodial Parent filed by the father, Rodney Shane Curtis should be granted and the Counter-Petition filed by the mother, Christy Suzanne Hill (Curtis) should be dismissed.
>
> It further appeared to the Court having heard the testimony of both parties and the children that a material change of circumstances has occurred and after conducting a comparative fitness analysis in accordance with T.C.A. § 36-6-404, the Court finds that it would be in the best interest of the minor children for the father to become the primary residential parent.

The trial court made no findings of fact supporting its conclusions that a change of circumstances had occurred and that the children's best interest was served by the change of custody. Ms. Curtis appeals the trial court's decision.

## II. Issue Presented

The issue before us is whether the trial court erred in ruling that a material change in circumstances occurred that necessitated changing primary custody of the children from Ms. Curtis to Mr. Curtis.

## III. Standard of Review

In a non-jury case, ordinarily our review is *de novo* upon the record of the proceedings below, with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993). In the present case, the trial court made no findings of fact. When the trial court fails

to make factual findings, there is nothing to which the presumption of correctness can attach. *Hickman v. Continental Baking Co.,* 143 S.W.3d 72, 75 (Tenn. 2004); *Kesterson v. Varner,* 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005); *Archer v. Archer,* 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995). Under these circumstances, "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn. 1999); *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002); *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995).

Trial courts are vested with wide discretion in matters involving custody of children. *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973). Accordingly, a trial court's decision regarding custody or visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge,* 42 S.W.3d 82, 88 (Tenn. 2001).

### IV. Analysis

We begin our review by reaffirming the premise that custody and visitation decisions are among the most important decisions that courts make. *Steen v. Steen,* 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). Promoting the child's welfare by creating an environment that promotes a nurturing relationship with both parents is the chief purpose in custody decisions. *Aaby v. Strange,* 924 S.W.2d 623, 629 (Tenn. 1996). Because children are more likely to thrive in a stable environment, the courts favor existing custody arrangements. *Id.* at 627; *Taylor v. Taylor,* 849 S.W.2d 319, 332 (Tenn. 1993); *Hoalcraft v. Smithson,* 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made. *Young v. Smith,* 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Steen,* 61 S.W.3d at 327; *Solima v. Solima,* 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998).

The governing statute in this case, T.C.A. § 36-6-101(B), provides that in cases wherein a party seeks to modify an existing custody arrangement, the threshold issue is whether a material change in circumstances has occurred since the initial custody determination:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

(i) In each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination.

T.C.A. § 36-6-101(B).

We recognize that the circumstances of children and their parents change – children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody. There are no hard and fast rules for when there has been a change of circumstance sufficient to justify a change in custody. *Cranston v. Combs,* 106 S.W.3d 641, 644 (Tenn. 2003). A court's decision with regard to modification of custody is contingent upon the circumstances presented, and the court should consider whether:

1) the change occurred after the entry of the order sought to be modified,

2) the changed circumstances were not reasonably anticipated when the underlying decree was entered, and

3) the change is one that affects the child's well-being in a meaningful way.

*Kendrick,* 90 S.W.3d at 570; *Blair v. Badenhope,* 77 S.W.3d 137 (Tenn. 2002); *Cranston,* 106 S.W.3d at 644. Custody decisions are not intended, and should not be designed, to reward parents for prior virtuous conduct, nor to punish them for their human frailties or past missteps. *Oliver v. Oliver,* No. M2002-02880-COA-R3-CV, 2004 WL 892536 at *2 (Tenn. Ct. App. M.S., Apr. 26, 2004); *Kesterson,* 172 S.W.3d at 561; *Earls v. Earls,* 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000).

The party seeking to change an existing custody arrangement has the burden of proving that there has been a material change of circumstances. T.C.A. § 36-6-101(B). If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not reexamine the comparative fitness of the parents, *Caudill v. Foley,* 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a "best interests of the child" analysis. In the absence of proof of a material change in the child's circumstances, the trial court should not change custody. *Hoalcraft,* 19 S.W.3d at 828.

Applying the above analysis to the present case, our review of the record persuades us that the evidence preponderates against a conclusion that Mr. Curtis has proven a material change of circumstances affecting the children's well-being in a material way that would justify the "drastic remedy" of changing custody. *See Oliver,* 2004 WL 892536 at *5; *Perez v. Kornberg*, No. M2004-01909-COA-R3-CV, 2006 WL 1540254 at *16 (Tenn. Ct. App. W.S., June 6, 2006). We address the allegations of the complaint, and the proof at the hearing supporting them, individually.

Regarding Ms. Curtis's history of living with men outside marriage, she testified that after the divorce, she lived with John Townsend for a period of time before marrying him. Her marriage

to Mr. Townsend lasted approximately two months. Ms. Curtis testified that Mr. Townsend got very abusive with her while the children were with Mr. Curtis, and that she had him arrested for abuse, divorced him and "the kids never saw him again."

Ms. Curtis admitted that at the time of the hearing, she was living with Mr. Kersteins outside wedlock.[1] She testified without contradiction that at those times when the children are present at her residence, Mr. Kersteins always sleeps on the couch. Ms. Curtis stated that since the divorce, two other men had spent the night at her residence, but not when the children were present. Mr. Curtis similarly admitted to having overnight guests of the opposite sex when the children were not present.

A custodial parent's non-marital sexual activities may be appropriately considered in the context of a custody decision. *Earls,* 42 S.W.3d at 890. However, "we have repeatedly pointed out that cohabitation alone does not necessarily provide grounds for changing custody when there is no proof that it has or will adversely affect the children." *Id.; see Varley v. Varley,* 934 S.W.2d 659, 666-67 (Tenn. Ct. App. 1996); *Sutherland v. Sutherland,* 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991); *Nelson v. Nelson,* 66 S.W.3d 896, 902 (Tenn. Ct. App. 2001); *Fain v. Fain*, No. M1999-02261-COA-R3-CV, 2000 WL 1879548 at \*5 (Tenn. Ct. App. E.S., Dec. 29, 2000). A parent's sexual conduct, if practiced inappropriately or indiscriminately, can adversely affect a child's well-being and in those cases, such conduct can be an important factor in custody determinations. *Berry v. Berry,* No. E2004-01832-COA-R3-CV, 2005 WL 1277847 at \*5 (Tenn. Ct. App. E.S., May 31, 2005). In *Parker v. Parker,* 986 S.W.2d 557, 563 (Tenn. 1999), the Tennessee Supreme Court acknowledged that "sexual indiscretion does not, by itself, disqualify a parent from being awarded custody, but it may be a relevant factor if it involves the neglect of the child." *See also Lockmiller v. Lockmiller,* No. E2002-02586-COA-R3-CV, 2003 WL 23094418 at \*5, 2003 Tenn.App. LEXIS 953 at \*14 (Tenn. Ct. App. E.S., Dec. 30, 2004).

The record before us offers no proof that Ms. Curtis neglected the children because of sexual indiscretion, nor that they suffered any adverse consequence because of the presence of Mr. Kersteins at her residence. There is proof in the record supporting the conclusion that the children are generally healthy, well-adjusted, and doing well in school in the primary custody of Ms. Curtis. The testimony in the record does not support Mr. Curtis's allegation that Mr. Kersteins "verbally berates" the children, although it does show that he "raises his voice" to them on occasion. We do not condone Ms. Curtis's choice to cohabitate without benefit of marriage; but, standing alone, it clearly does not rise to the level of a material change in circumstances warranting change of custody.

Regarding Mr. Curtis's allegation that Ms. Curtis had not fostered a positive father-daughter relationship between him and the children, the parties testified about a single incident which might arguably support this assertion. Mr. Curtis, who coaches his daughters' softball teams, testified as follows about this incident:

---

[1]Ms. Curtis's brief states that she and Mr. Kersteins have gotten married since the hearing.

A: The altercation that we had on the ball field was the first that's happened at a ball field. But no, she's tried to keep me from coaching in the past.

Q: So there was an altercation actually on the field?

A: It wasn't on. She was sitting in the stands. I was on the field coaching.

*   *   *

A: Okay. Well, Baylee was getting frustrated. She was pitching. She was getting frustrated with herself because she couldn't throw a strike. So she stomped the ground. Her mother yells at her from the stands. I turned around to her mother and said, "You can't do that because it's your fault the way she's acting, the way she is."

Q: So your daughter stomped the ground in disgust and anger on the field. Her mother yelled at her to not act that way. You turned around and confronted her mother and said, "You can't say anything because it's your fault she's that way?"

A: Yes.

Q: You think that was her mother's fault?

A: You wouldn't let me tell the example of why. But yes, it's her mother's fault.

Mr. Curtis further stated that Ms. Curtis "gave me an ultimatum that I had to quit coaching or she was going to make the girls quit playing." While Ms. Curtis did not deny making a statement to this effect, there is no evidence that she carried out the threat to make her daughters stop playing softball. In summary, the record reflects that the parties' relationship has not been harmonious, but Mr. Curtis has not presented evidence that Ms. Curtis has behaved in such a way as to undermine his relationship with his daughters, particularly not to a degree that would require the trial court to reexamine the parties' comparative fitness, or to make a change in the existing custodial situation.

Regarding Mr. Curtis's allegation that Ms. Curtis does not encourage the children spiritually and does not take them to church regularly, Ms. Curtis stated that she did not attend church on a

regular basis, either with or without the children. While this decision may not be one that a court approves or condones, we do not believe that it is an appropriate role of the courts to punish a parent for such a decision by taking custody of his or her children away. There was no evidence that the decision not to regularly attend church represented a change of circumstances from the time of the execution of the MDA.

## *V. Conclusion*

For the aforementioned reasons, we hold that the evidence preponderates against the trial court's finding that there had been a material change of circumstances to justify a change in custody and therefore the trial court erred in changing primary residential parent status from Ms. Curtis to Mr. Curtis. The judgment of the trial court is reversed, and the case remanded for a determination of Mr. Curtis's child support obligation, pursuant to the Tennessee Child Support Guidelines. Costs on appeal are assessed to the Appellee, Rodney Shane Curtis.

_____

SHARON G. LEE, JUDGE