IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 23, 2013 Session

**STEVE E. DOWLEN v. LUANA A. DOWLEN**

**Appeal from the Circuit Court for Robertson County**
**No. 747CC12009CV490      Ross H. Hicks, Judge**

_____

**No. M2012-01049-COA-R3-CV - Filed May 30, 2013**

_____

Mother and Father were divorced in 2010, and Father filed a petition for modification of the parenting plan seven months later in an effort to reduce Mother's parenting time. The trial court determined Father did not show a material change of circumstances and denied Father's petition. Father appealed, alleging the trial court erred in four different ways: (1) concluding Father had not proved a material change of circumstances; (2) precluding Father from introducing evidence of Mother's mental health prior to the divorce; (3) allowing the parenting plan to stay intact such that Mother is able to return to court to prove her mental stability and seek an increase in her parenting time; and (4) not awarding Father his attorney's fees. We affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Kimberly Lane Reed Bracey, Goodlettsville, Tennessee, for the appellant, Steve E. Dowlen.

Gregory D. Smith, Clarksville, Tennessee; Charlotte Ann Fleming, Springfield, Tennessee, for the appellee, Luana A. Dowlen.

**OPINION**

**I. BACKGROUND**

Steve E. Dowlen ("Father") and Luana A. Dowlen ("Mother") were divorced in August 2010. They have two children who were three and six years old at the time of the divorce. Father was named the primary residential parent in the Permanent Parenting Plan Order and was granted 242 days with the children each year. Mother was granted 123 days

per year and was expressly permitted to petition the court for additional time as set forth in the parenting plan:

> Based upon the recommendations of Guardian Ad Litem, Jennifer L. Evans, she recommends that it is premature to decide a Parenting Plan for the remainder of the Minor Children's minority; therefore, the parties may agree, or the Mother may file a Petition, stating that her continued mental health stability (for example, compliant with assessment, therapy and medication) will constitute a material change of circumstances such that the Parenting Plan should be modified to increase her parenting time. Mother will not need to prove that the Father has not cared properly for the Minor Children but only that the Mother has remained mentally stable and should enjoy more time with the Minor Children. Mother may not file such a Petition with the Court until at least 6 months after the Final Decree has been entered.

Father filed a Petition to Modify in March 2011 in which he argued a material change in circumstances warranted modifying the parenting plan to reduce Mother's time with the children. Mother filed an Answer and Counter-Petition to Modify Parenting Plan in which she asked the court to award her more time with the children. Mother alleged she was "in compliance with all aspects of the Parenting Plan and Final Decree and her treatment in this matter and [is entitled to] more residential time with the Minor Children in this matter."

Following a two-day hearing in March and April 2012, the trial court denied both Father's and Mother's petitions. The court found that neither party satisfied his/her burden of proof justifying a change in the parenting plan. As to Father's petition, the court found that the evidence regarding Father's complaints did not "justify any reduction in Ms. Dowlen's time."

As to Mother's petition, the court stated:

> I don't know, based on this file, what Ms. Dowlen's diagnosis was, what her condition or prior treatments were and I don't know today whether she is mentally stable. And I find that she has not proven to me that she has remained mentally stable or that she has continued mental health stability. So her petition is dismissed as well.

The trial court thus let stand the parenting plan that was adopted as part of the divorce. The parenting plan provides for all major decisions to be made jointly, including those regarding the boys' education, non-emergency health care, religious upbringing, and extracurricular activities.

-2-

Father appealed the trial court's judgment arguing the trial court erred in the following ways: (1) finding that Father had not proved a material change in circumstances; (2) denying Father the opportunity to introduce pre-divorce evidence of Mother's mental health; (3) not limiting Mother's opportunity to return to court in the future to prove her mental stability and seek more time with the children; and (4) denying Father his attorney's fees. Mother did not appeal the court's dismissal of her petition.

## II. STANDARD OF REVIEW

In a non-jury case, our review is *de novo* on the record of the proceedings below, granting a presumption of correctness to the trial court's findings of fact unless the evidence preponderates against those findings. Tenn. R. Civ. P. 13(d); *Curtis v. Hill*, 215 S.W.3d 836, 839 (Tenn. Ct. App. 2006). "[T]rial courts necessarily have broad discretion to make decisions regarding parenting arrangements to suit the unique circumstances of each case." *Greenwood v. Purrenhage*, 2013 WL 1228022, at *1 (Mar. 26, 2013) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) and *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006)). As a result, " a trial court's decision regarding custody or visitation should be set aside only when it 'falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Curtis*, 215 S.W.3d at 839 (quoting *Eldridge*, 42 S.W.3d at 88).

Determinations regarding custody and visitation "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We therefore "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

## III. MODIFICATION OF RESIDENTIAL PARENTING PLAN

The General Assembly has determined what a parent must prove in a request to modify a residential parenting schedule:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of

-3-

the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(c).

Not every change in the circumstances of a child or a parent will qualify as a "material change of circumstance" for purposes of this statute. Rather, the change must be significant to be material. *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007).

Father complains about Mother's parenting in several respects in an attempt to show that a material change of circumstances has occurred necessitating the consideration of whether a change in residential schedule is in the children's best interest. Father first alleges Mother harms the children by locking them in their room at night. Second, Father asserts Mother is not mentally stable because she is taking three different medications to control her anxiety and depression. Third, Father contends Mother has failed to work with the children on educational endeavors. Fourth, Father claims Mother does not provide the older child with necessary medical treatments. We will address each of these allegations in turn.

We turn first to Father's allegation that Mother is harming the children by locking them in their room at night. Mother testified that when she and Father were still living together, before the divorce, Father came up with the idea of turning the doorknob of the children's bedroom around so the children could be locked in and could not lock the parents out. The children told their counselor they were afraid when they were locked in their room, and the counselor called the Department of Children's Services ("DCS") to report this incident.[1]

Mother testified that during a visit by an individual from DCS she turned the doorknob around correctly and the doorknob has not been turned around the wrong way since that time. Mother testified that she has not locked the children in their room, and Father presented no evidence that the doorknobs have been turned back around the wrong way or that there was still an issue as of the time of trial that the children were being locked in their room.

Next we turn to Father's assertion that Mother is not mentally stable because she is taking three different medications to control her anxiety and depression. Father presented

---

[1]The counselor could not pinpoint a timeframe when the children were making these complaints.

no evidence of Mother's mental condition other than the fact that the number of medications she is taking has increased since the parties were divorced. Mother testified she is emotionally stable, she sees a therapist on a regular basis, and she does not miss any scheduled therapy sessions. Mother's mother testified that she sees Mother nearly every day and that in her opinion Mother's mental and physical condition have improved "100%" since the divorce. Mother's current therapist testified that Mother has not missed any appointments with him and that he had no reason to be concerned about Mother's current emotional condition.

Father next contends Mother fails to work with the children on educational endeavors and that Mother has taken the children out of school during Father's parenting time without his knowledge or consent. Father presented evidence that Mother kept the older child out of his first grade class one day to see a religious leader without Father's knowledge; that Mother brought the boys with her to watch a friend's child at a time when one of the children had a mild fever; and that Mother took the older child to an educational testing center to determine what sort of a learner he was without informing Father of this beforehand.

Despite Father's complaints about the way Mother "teaches" the children at home, the evidence was undisputed that both children are doing very well in school. The majority of issues Father complains of occurred during the 2010-11 school year and were no longer problems during the 2011-12 school year, when the children were five and seven years old. In fact, Father testified that the concerns he had when he filed his petition for modification were no longer concerns by the time of trial and that he believed Mother was helping the children with their homework more than she had previously.

The final issue Father raises to support his argument that there has been a material change in circumstances is that Mother does not consistently give the older child his asthma medicine. The evidence showed that the older child is supposed to have nightly breathing treatments and that on at least one occasion Mother has not administered this treatment. Father testified, however, that by the time of trial Mother was "doing a lot better," suggesting that the breathing treatments were no longer an issue of concern.[2]

After the close of evidence the trial court stated, "I've heard a lot about incidents, all of which the Court understands were concerning to Mr. Dowlen and/or Ms. Dowlen at the time they happened. But as I look at them and try to look at the big picture here, the Court is unpersuaded that they justify any reduction in Ms. Dowlen's time." Our review of the

---

[2]Father alleged Mother wants to take the older child off all medications, but the evidence showed only that Mother has investigated other options of treatment by seeking second opinions in an effort to determine the best course for treating the child's asthma.

evidence leads us to agree with the trial court.  Father has failed to satisfy his burden of proving by a preponderance of the evidence that a material change of circumstances has occurred affecting the children's best interests.[3]  In addition, Father has failed to show that Mother has not adhered to the parenting plan or that the parenting plan is no longer in the children's best interest.[4]  Tenn. Code Ann. § 36-6-101(a)(2)(c).  Indeed, Father testified that by the time of trial the concerns that caused him to file his petition initially had improved.

## IV.  EVIDENCE OF MOTHER'S HEALTH PRIOR TO THE DIVORCE

Father attempted to introduce evidence of Mother's mental health prior to the divorce in an effort to defeat Mother's petition as well as to show a material change of circumstances had occurred to support his petition.  Mother's attorney objected to Father's introduction of evidence of Mother's mental health prior to the divorce, and the trial court sustained the objection.

Father appeals the court's ruling sustaining Mother's objection to Father's introduction of this evidence.  The admissibility of evidence is within the sound discretion of the trial court, and we will not overturn the trial court's decision without proof that the trial court abused its discretion. *Mercer v. Vanderbilt University, Inc*., 134 S.W.3d 121, 131 (Tenn. 2004).  A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is contrary to logic or reasoning and that causes an injustice to the party complaining. *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

To succeed on his petition to modify, Father had the burden at trial to prove by a preponderance of the evidence that a material change of circumstances had occurred that affected the children's best interest.  Since the trial court did not grant Mother's petition, and since Mother does not appeal the court's dismissal of her petition, we need not address whether the trial court should have permitted Father to introduce evidence of Mother's mental health prior to the divorce in an effort to defeat her petition.

Father does not explain how evidence of Mother's mental health prior to the divorce has any bearing on the issue of whether the trial court should have further limited Mother's

---

[3]The children's therapist testified that the children have adjusted to the current residential schedule.

[4]Father presented evidence that Mother has occasionally been late picking the boys up from Father's house or having the boys ready to leave when Father arrives to pick them up.  These incidents do not prove, however, that Mother is not adhering to the parenting plan.

time with the children as of the time of trial.[5]  The only evidence Father introduced at trial to show Mother's mental health constituted a material change of circumstances was that she was taking more medications than she was taking before the divorce.  However, Mother's therapist testified Mother has not missed her appointments with him and that he had no reason to be concerned about Mother's current emotional condition.

The trial court did not abuse its discretion in excluding evidence of Mother's mental health prior to the divorce.  We affirm the trial court's judgment on this issue.[6]

## V. MOTHER'S OPPORTUNITY TO RETURN TO COURT

The parties' permanent parenting plan expressly provides that "Mother may file a Petition, stating that her continued mental health stability . . . will constitute a material change of circumstances such that the Parenting Plan should be modified to increase her parenting time."  When the parties were seeking a divorce, they submitted the parenting plan to the court for approval contemporaneously with the MDA.  The trial court adopted the MDA in its entirety as an order by the trial court, as set forth in the Final Decree of Divorce, and the trial court approved the parenting plan as proposed.

Father complains that when the trial court was ruling on the parties' petitions to modify, the trial court should have modified the language of the parenting plan to preclude Mother from returning to court in the future to prove her mental stability and seek more time with the parties' children.  Father argues:  "Since the Court found that the Mother had not carried her burden, she should not be allowed another bite at the apple to prove it at a later date and drag the Father and children through a similar proceeding any time she desires to try to prove her case."

We note first that Father raises an issue that is not ripe for adjudication because he is objecting to an uncertain or contingent future event that may not occur as anticipated, or may not occur at all, and therefore does not present a justiciable legal issue.  *See B & B Enter. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848-49 (Tenn. 2010) (court will decline to act where there is no need for court to act or where refusal to act will not prevent

---

[5]Father made an offer of proof which consisted of behavior Mother engaged in to harm herself before the parties were divorced.  Father does not suggest Mother has repeated any of this behavior since the divorce or that she has done anything else since the divorce that renders this pre-divorce evidence relevant or material to the court's ruling.

[6]Father's reliance on *Gillum v. McDonald*, 2004 WL 1950730 (Tenn. Ct. App. Sept. 2, 2004), does not support his argument because unlike *Gillum*, Father does not contend Mother's conduct prior to the divorce had any relevance to the children's best interest when the modification petition was tried.

parties from raising the issue at a more appropriate time). Second, the statute pertaining to modification of a residential parenting schedule does not limit the number of times a party may petition the court if the party believes he or she can prove by a preponderance of the evidence that a material change of circumstances has occurred that affects the children's best interest and that the residential parenting schedule should be altered. *See* Tenn. Code Ann. § 36-6-101(a)(2)(c).

The trial court did not err by leaving intact the terms of the parties' parenting plan.

## VI. ATTORNEY'S FEES

The trial court did not award either Father or Mother their attorney's fees. Father's final argument is that the trial court erred in failing to award him the attorney's fees he incurred at the trial level. Father also seeks an award of his fees incurred on appeal. A trial court has the discretion to award a prevailing party attorney's fees in a case involving custody or alimony. Tenn. Code Ann. § 36-5-103(c). Father is not a prevailing party in this case. The trial court thus committed no error in declining to award Father his fees.

The decision whether to award attorney's fees incurred on appeal is a matter within this Court's discretion. *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010). Father is not the prevailing party in this appeal, and we decline to exercise our discretion to award him the fees he incurred in this appeal.

## VII. CONCLUSION

We affirm the trial court's judgment in all respects. Costs of this appeal shall be assessed against the appellant, Steve E. Dowlen.

_____
PATRICIA J. COTTRELL, JUDGE