IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 4, 2020

## SAMANTHA BEAU BALLARD v. CASEY JOHN BALLARD

**Appeal from the Chancery Court for Montgomery County**
**No. DI-16-266      Ted A. Crozier, Jr., Judge**

_____

### No. M2019-00990-COA-R3-CV

_____

A father filed a petition to modify a parenting plan in which he sought to change the primary residential parent or modify the residential schedule. The trial court denied his petition, and he appealed. We hold that the father failed to establish a material change of circumstances to justify any change to the parties' parenting plan and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Christopher J. Pittman and Mary Leigh Scharlott, Clarksville, Tennessee, for the appellant, Casey John Ballard.

Jacob P. Mathis, Clarksville, Tennessee, for the appellee, Samantha Beau Ballard.

### OPINION

#### I. FACTUAL AND PROCEDURAL BACKGROUND

Samantha Beau Ballard ("Mother") and Casey John Ballard ("Father") were divorced in July 2016. At the time of the divorce, their daughter was four years old. The parties entered into an agreed parenting plan designating Mother as the primary residential parent; the trial court approved the plan and incorporated it into the final decree. They amended the parenting plan in November 2017 following mediation. In October 2018 Mother filed a petition to modify the child support order because Father was not fully exercising his parenting time. Father answered the petition and filed a counter-petition to modify the parenting plan and designate him as the primary residential parent. The trial court held a hearing on April 8, 2019, and it concluded that (1) grounds

did not exist justifying a change in the child support order and (2) Father failed to establish a material change of circumstances warranting a change in the parenting plan. Father appealed.[1]

When the parties modified their parenting plan in November 2017, they maintained Mother as the primary residential parent and granted Father 131 days with the child so long as the parties lived within 100 miles of one another.[2] The portions of the plan relevant to this appeal provided that Father was able to exercise parenting time from Thursday after school until Monday morning every other weekend. During the intervening weeks, Father had parenting time on Thursdays from the time school ended until 8:00 p.m. Consistent with Tenn. Code Ann. § 36-6-101, the plan awarded Father telephone conversations with the child twice each week. The plan did not mention anything about video calls between Father and the child.

Father was a member of the military subject to lengthy deployments, and he did not receive much notice before being deployed. The evidence presented at trial showed that Father was deployed for 177 days in a row from October 2017 through May 2018 and another 28 continuous days in July and August 2018. When the parties amended their parenting plan in 2017, Father was engaged to be married, and he and his fiancée already had a young child. The amended plan anticipated Father's work-related absences by providing as follows:

> Visitation during Father's deployment: The parties agree that the parties' child shall be allowed to visit with the sibling in the Father's home and with the Father's significant other, Jamie Gravatt, during his deployment every other weekend on Saturday and Sunday from either 9:00 a.m. to 5:00 p.m. or 8:00 a.m. to 4:00 p.m. The parties can agree to allow overnights if they are agreeable to said overnights. The Mother shall provide Jamie Gravatt with her schedule at least two weeks in advance, however, it is desirable that the schedule be provided as soon as she receives her schedule. The parties agree that prior to the Father's deployment on October 1, 2017, the parties and Jamie Gravatt shall all meet and discuss times, schedules, etc.

In his counter petition, Father alleged that a material change of circumstances had occurred since the parties amended their parenting plan in November 2017 and that the changed circumstances included the following:

a. The Father is remarried;

---

[1]Mother does not challenge the court's denial of her petition to modify the child support order on appeal. As a result, we will not address the grounds she asserted in support of her petition or the court's rationale for denying the same.

[2]If the parties lived more than 100 miles apart, Father would have only 76 days with the child.

b.  While primarily in the Mother's care, the child is not excelling in school;
c.  The Mother refuses to co-parent with the Father and does not support the Father's discipline of the minor child after agreeing to do so;
d.  Due to the age of the minor child the current schedule is not in the child's best interest and should be modified; and
e.  On the Father's "off week" the Mother agreed for the Thursday night visitation to be overnight visitation and as the child became used to the Thursday night overnight visitation the Mother would choose to weaponize this time and take it away from the Father anytime she was upset with the Father causing disruption in the child's life.

The evidence introduced at trial revealed that Father was engaged to be married to Jamie Gravatt when the parties amended their parenting plan in November 2017. The child was in first grade at the time of trial. Father stated that he was concerned she was falling behind when she was in kindergarten, but he presented no evidence that she was struggling academically in first grade or that Mother's position as the primary residential parent was connected with any academic issues the child may have had.

When asked about his assertion that Mother did not support his discipline of the child, Father testified as follows:

Q. And have there -- on all of those occasions has your ex-wife followed through and kept the same consistency that you have when it goes the other direction?

A. Not always.

Q. Okay. Tell the Court an example of that.

A. Just small things so I can understand why there might be some not -- no desire to follow. One of the ones that burns in my mind is, you know, children don't always finish their dinner when they're told to. And typically, like, Hey, you need to finish your dinner or there's nothing else. Like, this is the last meal of the day. So then we show up to an event, and Samantha -- Ms. Ballard was there, and the first thing I do is let her know, Hey, this is what happened, here is what we imposed, please don't buy her anything. Shortly thereafter they were consuming a snack together so -- and that's -- like that.

On cross examination, Father admitted that he had no proof that Mother had intentionally gone against his decision not to feed the child any more that evening. Instead, Father

conceded that the child might have reached over and plucked a blueberry from Mother's fruit snack:

Q. The baseball game snack, you said she told – you told her, Hey, she didn't eat dinner, don't give her any snacks, correct?

A. Yes. She did not finish her dinner. That was part of the setup, that she was going to not be able to receive a snack at the game.

Q. Then you said you saw the child eating something with Mom; is that right?

A. That's correct.

Q. And do you remember what it was you saw the child eating?

A. It was popcorn or a hotdog, I believe. Something they sold at the concession stand over in Woodlawn.

Q. And if Ms. Ballard were to retake the stand and say that the child ate one blueberry out of the fruit snack that she bought at the concession stand, would that be accurate?

A. You know what, I do recall it being a discussion about blueberries. It doesn't change the sentiment of what she was doing.

Q. Well, was she sitting with the child while she was eating something?

A. Yes.

Q. And if the child reached over and ate one blueberry, what is it she should have done?

A. Say, "Hey, you already didn't eat your dinner. We need to discuss this with Daddy. The punishment stands with me just like it does with him," just as I would be expected to do the same for her.

Q. But after she did it the once, she didn't get any more blueberries, did she?

A. Because I had come over and Samantha had seen that I watched this happen.

Father testified about his Thursday evening visitation with the child. The amended plan provides that Father shall have visitation with the child on alternate Thursdays from the time school ends until 8:00 p.m. The parties agreed for a period of time to depart from the amended plan by switching the nights Father had overnight visitation from Sundays to Thursdays so that the child was able to participate in a church activity on Sunday evenings. However, when Father refused to return the child to Mother on Sunday evenings or bring the child to the church activity if he was still exercising visitation at that time, Mother reverted to the plan's terms and refused to allow Father to continue with overnight visitation on Thursdays. As a result, Mother did not deny Father any time to which he was entitled under the amended plan.

Mother maintained that she had not violated the terms of the amended plan in any respect, which Father did not dispute. Mother testified that when Father was deployed, she allowed Father to exercise liberal video phone calls with the child each week even though the parenting plan did not provide for video calls. She testified that she began to limit Father's calls when he was phoning numerous times a day, but that she did her best to be "very accommodating" to make sure the child stayed in contact with Father. Mother also testified that she sent Father photos of the child on an ongoing basis, which she was not required to do under the terms of the plan.

Following the presentation of evidence, the trial court issued an oral ruling denying both parties the relief they requested. The court stated, in part, the following:

> Here is my problem: There has got to be a material change of circumstance, okay? You-all did this thing a little over, what, a year and a half ago, this parenting plan. Okay. You-all set out what you were going to do, and I haven't seen a change. Dad is still being deployed. He says he is being deployed a little less, but he still gets deployed. None of these things, as far as her not letting you talk all the time - - or as much as you want with the children, sending the pictures, any of these constitute material change[s] in circumstance.

In its written order, the court stated:

1. That the prior Parenting Plan was entered by agreement in November 2017.

2. That the Court does not find a material change of circumstances has occurred sufficient to warrant a modification of the Parenting Plan.

3. That the Court does not find a 15% variance in child support.

Father appeals from the trial court's decision, arguing that the trial court erred by applying the wrong legal standards to determine whether he had established a material change of circumstances for purposes of changing the primary residential parent as opposed to modifying the residential schedule. Father contends that if the trial court had applied the correct legal standards in making its material change of circumstances determination, it would have concluded that Father did in fact establish a material change of circumstances.

## II. STANDARD OF REVIEW

The Tennessee Supreme Court has written that "[a] trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). As a result, "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Id.*; *see also* TENN. R. APP. P. 13(d). Moreover, trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693).

> On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge* [*v. Eldridge*, 42 S.W.3d [82,] 88 [(Tenn. 2001)]). This Court stated, "'An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)); *see also Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014) (applying same standard announced in Armbrister—a case involving modification of a residential parenting schedule—to a trial court's initial primary residential parenting designation). "Appellate courts should reverse custody decisions 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'" *Kelly*, 445 S.W.3d at 696 (quoting *Armbrister*, 414 S.W.3d at 693); *see Eldridge*, 42 S.W.3d at 88.

*Id.* An appellate court should not reverse a trial court's decision regarding a petitioner's request to modify a parenting plan "merely because reasonable minds could reach a different conclusion." *Id.* We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).

III. ANALYSIS

A petitioner seeking to modify the parenting plan, either to change the primary residential parent or to modify the residential schedule, carries the burden of establishing there has been a material change of circumstances. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C); *Armbrister*, 414 S.W.3d at 704. If a court determines that a petitioner has established a material change of circumstances, the court must then apply the "best interest" factors set forth in Tenn. Code Ann. § 36-6-106(a). *Armbrister*, 414 S.W.3d at 697-98 (citing Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C), –106(a)); *see In re Gunner F.*, No. M2016-01650-COA-R3-JV, 2017 WL 2438572, at *2 (Tenn. Ct. App. June 6, 2017) (stating that court is not required to determine whether it is in child's best interest to modify parenting plan if it determines there has been no material change in circumstances); *see also Canada v. Canada*, No. W2014-02005-COA-R3-CV, 2015 WL 5178839, at *4 (Sept. 4, 2015).

A. <u>Modification of Parenting Plan to Change Primary Residential Parent</u>

The statute addressing the modification of parenting plans provides the following when the modification sought is a change in the primary residential parent:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). When a petitioner seeks a modification to change the primary residential parent, "the threshold issue is whether there has been a material change of circumstances since the plan took effect." *In re Gunner F.*, 2017 WL 2438572, at *2; *see also Keisling v. Keisling*, 196 S.W.3d 703, 718 (Tenn. Ct. App. 2005).

> "Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way."

*H.A.S. v. H.D.S.*, 414 S.W.3d 115, 123 (Tenn. Ct. App. 2013) (quoting *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). "Not every change in a child's life or the life of his or her parents rises to the level of a material or significant change warranting a change in his or her primary residential parent." *In re Gunner F.*, 2017 WL 2438572, at *2 (citing *Rigsby v. Edmonds*, 395 S.W.3d 728, 736 (Tenn. Ct. App. 2012)). "The fact that a child gets a year older every year, inevitable as it is, cannot be regarded on its own as inherently a material change of circumstances for purposes of altering the primary residential parent." *Rigsby*, 395 S.W.3d at 736. "Once the court has made an initial determination of custody, it is generally reluctant to change that determination unless it is clear that such a modification is necessary." *Canada*, 2015 WL 5178839, at *4 (citing *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006)).

Tennessee Code Annotated section 36-6-101(a)(2)(B)(ii) requires the trial court to "make such a finding as to the reason and the facts that constitute the basis for the custody determination." *See* TENN. R. CIV. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). "[F]indings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations 'often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings.'" *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (quoting *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)); *see also Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013).

The trial court here did not make the requisite findings of fact. However, an appellate court is sometimes able to determine where the preponderance of the evidence lies even in the absence of a trial court's findings of fact: "'On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court 'may "soldier on" when the case involves only a clear legal issue, or when the court's decision is "readily ascertainable.'" *In re Gunner F.*, 2017 WL 2438572, at *3 (quoting *Pandey*, 2013 WL 657799, at *5 (additional citations omitted)). This case is one of those instances. The parties here did not present contradictory testimony or evidence that required the trial court to decide which party's testimony or evidence to believe. Moreover, because the trial court found that Father failed to prove a material change of circumstances, there was no need to conduct a best interest analysis.

Our review of the evidence leads us to conclude that none of the circumstances upon which Father relies to support his petition constitute a material change in circumstances for purposes of changing the primary residential parent. Father was required to show that the asserted changes (1) occurred after the parties amended their plan in November 2017, (2) were not known or reasonably anticipated in November 2017, and (3) affected the child's well-being in a meaningful way. *See H.A.S.*, 414

S.W.3d at 123. Father was engaged to his current wife when the parties amended their plan in November 2017, so his remarriage was anticipated when the plan was amended. The child's academic performance did not seem to be an issue by the time of trial, and Father introduced no evidence that Mother's designation as the primary residential parent contributed to any difficulties the child had in kindergarten. Father failed to establish that Mother refuses to co-parent with him or that she does not support his discipline of the child after the child moves to her care after leaving Father. Father also failed to establish that Mother denied him any time with the child to which he is entitled under the amended plan. When switching Father's overnight from Sunday to Thursday did not work out, Mother returned to the terms of the amended plan, which does not award Father overnight visits on alternating Thursdays. Instead of establishing that Mother denied Father any time with the child to which he was entitled, the evidence showed that Mother was generous and provided Father with more than he is entitled to under the plan. She allowed him to have more phone calls with the child than the plan calls for, including video calls when Father was deployed, and she sent him photos of the child when doing so is not required under the plan. Finally, Father failed to introduce evidence to support his assertion that the current schedule is not in the child's best interest and should be modified due to her age.

Because Father failed to establish a material change of circumstances for purposes of changing the primary residential parent, we need not address the best interest factors set forth in Tenn. Code Ann. § 36-6-106(a). We affirm the trial court's judgment denying Father's request to change the primary residential parent from Mother to himself.

B.  Modification of Parenting Plan to Alter Residential Schedule

When a petitioner seeks to modify a parenting plan by changing the residential schedule, the statute provides as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C). The *Armbrister* Court addressed this portion of the modification statute and acknowledged that this section "sets 'a very low threshold for establishing a material change of circumstances' when a party seeks to modify a residential parenting schedule." *Armbrister*, 414 S.W.3d at 703 (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007)). The Court explained:

> Consistent with section 36-6-101(a)(2)(C), we hold that facts or changed conditions which reasonably could have been anticipated when the initial residential parenting schedule was adopted may support a finding of a material change in circumstances, so long as the party seeking modification has proven by a preponderance of the evidence "a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C).

*Id.* at 704. Remarriage does not necessarily constitute a material change in circumstances. *Id.* at 705.

To prove that he was entitled to a modification of the residential schedule, Father was required to establish a material change of circumstance that affected the child's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(C). Father failed to make this showing. As a result, we have no need to conduct a best interest analysis. *See Armbrister*, 414 S.W.3d at 697-98. We affirm the trial court's judgment denying Father's request for a change in the amended parenting plan's residential schedule.

## IV. CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Casey John Ballard, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE