IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2013 Session

**H.A.S. v. H.D.S.**

**Appeal from the Juvenile Court for Jefferson County**
**No. 9334      A. Benjamin Strand, Jr., Judge**

No. E2012-01233-COA-R3-JV - Filed April 1, 2013

Lillian ("the Child") is the offspring of H.A.S. ("Father") and H.D.S. ("Mother"). The parties were never married to each other. They entered into two mediated agreements regarding Father's co-parenting time with the Child. The agreements were never presented to or approved by a court. The parties followed the agreements for a time but conflicts developed and Father filed a petition seeking review and modification of the agreements. He asserted that there had been a material change in circumstances and that he should be awarded primary custody of the Child. Following a bench trial, the court found and approved the mediated agreements as being in the Child's best interest. The court further determined that there had been no change in circumstances warranting a change in custody; but the court did find and hold that Father's co-parenting time should be revised. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Shelley S. Breeding, Knoxville, Tennessee, for the appellant, H.A.S.

Carl R. Ogle, Jr., Jefferson City, Tennessee, for the appellee, H.D.S.

# OPINION

## I.

The parties dated for a few months during which time the Child was conceived. They lived together for a time during the pregnancy, but Mother moved out prior to the Child's birth. She was living in her own apartment when the Child was born on August 22, 2008. Father was present for the delivery, but the couple did not continue their relationship. The Child has lived continuously with Mother; she was three at the time of trial. Mother is now married. She and the Child live with Mother's husband in Jefferson County. Father has also married. He and his wife live in Knox County.

In December 2008, Father filed a petition in Knox County to establish paternity. In response, Mother filed a petition in Jefferson County. It also sought to establish the Child's parentage. She accompanied her petition with a permanent parenting plan.[1] The competing petitions remained pending while the parties twice attended mediation – once in April 2009 and later in September of the same year. The parties reached agreements setting forth Father's co-parenting time and related matters. For ease of reference, we will refer to these two agreements collectively as "the Agreement." It is undisputed that the Agreement was signed by the parties, their attorneys, and the mediator. Neither of the agreements was ever approved and entered of record by a court order. Neither of the two agreements, nor any other document of record, expressly makes an award of custody of the Child.

The agreement negotiated in April 2009 is styled simply "Mediated Agreement" and begins by stating: "With no presumption of correctness Father will have the following co-parenting time with [the Child] . . . ." Father was allotted one overnight visit on alternating Fridays and specified time each Tuesday until 2:00 p.m. The parties agreed to return to mediation shortly "to discuss a more permanent schedule. . . ." Further, the parties agreed that jurisdiction of all custody issues would be transferred to Jefferson County. As planned, the parties met again and a second agreement was signed in September 2009. The latter agreement included a more detailed parenting schedule.[2] Under the September agreement, Father was allowed co-parenting time on alternate weekends and on Tuesdays. In addition, the parties agreed to a sharing schedule by which holidays, summer break, and other significant dates were equally divided between them. Further, Father agreed to pay "at least

---

[1]None of the Jefferson County filings are in the record.

[2]The second agreement expands somewhat the provisions in the first. There is no dispute in the record as to the applicable language with respect to the current controversy.

$45.00 per week" in child support pending a child support hearing or agreement.[3] The September agreement provided for further review of the co-parenting schedule "when [the Child] starts school."

In February 2011, Father filed a "Petition to Review"in the Knox County Juvenile Court in which he asserted that the filing of his petition was triggered by his desire to have the Child begin preschool. Father contended that the September agreement had become "unworkable" based on the parties' disagreements regarding preschool and other "difficulties" including Father's claim that Mother refused to allow him reasonable telephone access to the Child. The petition asserted that Father was "fully capable and willing" to assume custody of the Child, and "believes it to be in her best interest to reside primarily with him." Father attached a proposed modified parenting plan to this effect. In May 2011, the trial court, *i.e.*, the Jefferson County Juvenile Court, entered an order setting Father's child support obligation.[4] The following month, the Knox County Juvenile Court transferred jurisdiction to the trial court as the more appropriate forum to hear the issues raised in the competing petitions.

In July 2011, Father, through his new and current counsel, moved the court to permit him to file an amended petition to review based on his assertion that existing "circumstances and issues," not addressed before, "require a review of the parties' co-parenting schedule." In his amended petition, Father further alleged that Mother was not adhering to the parenting schedule under the September agreement in that she was refusing to allow Father his scheduled time on alternating Tuesdays. In addition, Father alleged that the September agreement was ambiguous regarding the parties' summer co-parenting time and did not address the Child's birthday. With respect to other matters, Father asserted that Mother had not consulted him regarding non-emergency medical decisions and was not properly caring for the Child. Father concluded that Mother's withholding of the Child and refusal to allow him telephone contact constituted a material change in circumstances. He asked that he be allowed to show that the agreement mediated in September needed to be reviewed and modified. Mother answered and asserted that review of the parenting schedule was premature since the Child had not yet begun school – an event contemplated by the September agreement as a trigger for review and possible revision. Mother filed a counter-petition which stated her own issues with Father's visits and requested that the court resolve them to avoid future difficulties.

---

[3]The record indicates that the State filed a petition to establish child support on behalf of Mother.

[4]The order is referenced, but is not before us.

The parties appeared for a hearing on two dates in December 2011. At the initial hearing, they outlined their positions. Father stated that he sought review of the September agreement based on his contention that the co-parenting schedule was not being followed and that this was a material change in circumstances. Counsel stated: "[Mother] is not allowing [Father] to have time, [s]o we petitioned [for] review allotted by the . . . Agreement, in the alternative this is an initial setting." Father submitted that, in either case, "it would be a comparative fitness analysis." Mother asserted that the Agreement was a contract that the parties had entered into in the Child's best interest and reasserted her position that it was not yet due for review. She further contended that Father's petition did not state a material change of circumstances, but, at most, stated a failure to follow every provision of the Agreement to the letter. Father responded that "we're alleging there's been a substantial, or a material change in circumstances, and that it is in the [C]hild's best interest to be with [Father]." After hearing from the parties through their counsel, the trial court advised the parties that it found the issue to be whether Mother was blatantly or completely denying Father his visitation under the Agreement. If so, the court concluded, it could "open it up again . . . and change it." If not, the Agreement would be enforced. The court added that if the court had to "do away with that mediated agreement," it intended to split the visitation "right down the middle" unless Father proved Mother to be "completely unfit."

Two weeks later, the hearing reconvened. In opening remarks, counsel for Father reasserted that if the court agreed with Father that Mother's denial of Father's Tuesday visits and a lack of telephone contact with the Child constituted a material change in circumstances, the court should proceed to compare the parties to determine which one was "more fit" to have custody. Before hearing the proof, the court observed that, although the parties had signed the Agreement, neither of the documents had been court-approved; therefore, the court concluded that they were not binding. Mother concluded, "That's what we're asking the Court to do here today as far as what the parties have done by their practice." She further asserted that "the [A]greement they agreed to was in the best interest[] of the [Child] and should be approved and become a part of this Court order." Testimony by the parties and others followed.

II.

In its bench ruling, the court stated as follows:

> [T]he Mediated Agreements entered into by the Parties . . . were and are in the best interest of the . . .[C]hild, and are approved by the Court and attached . . . [to] this Judgment, and that no change of circumstances has occurred to alter Custody of said [Child], but the visitations should be further defined. . . .

Consistent with the September agreement, the Court ordered that Father would have the Child every other weekend and granted each party two uninterrupted two-week periods during the summer. In addition, the court granted Father a visit *every* Tuesday and telephone contact with the Child every Thursday evening, and at "any other reasonable time," and included the Child's birthday in the schedule. Father filed a timely notice of appeal.

### III.

Father has presented the following issues for our consideration:

> 1. Did the trial court abuse its discretion in finding that the Agreement was binding on the parties?

> 2. If the Agreement is not binding on the trial court, did the court abuse its discretion by not conducting a comparative fitness analysis?

> 3. Assuming that the Agreement is binding on the trial court, did the court abuse its discretion by not applying the correct legal standard of preponderance of the evidence to modify the change of custody?

> 4. Was the trial court improperly influenced by allowing hearsay evidence of "present sense impression" into evidence?

### IV.

On appeal, we presume the correctness of the trial court's findings of fact provided the evidence does not preponderate against them. ***Crabtree v. Crabtree***, 16 S.W.3d 356, 360 (Tenn. 2000); Tenn. R. App. P. 13(d). We review the trial court's conclusions of law de novo with no presumption of correctness. ***Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.,*** 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005).

With respect to appellate review of decisions regarding parenting issues, this Court has observed:

> [P]arenting decisions regarding the parties' children are peculiarly within the broad discretion of the trial judge. The trial court's decisions on these issues are reviewed on appeal under an abuse of discretion standard. Under the abuse of

discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." When no error in the trial court's ruling is evident from the record, the trial court's ruling will stand. The trial court's decision need not be ideal, even in parenting matters, and the appellate court should not reverse the trial court's order simply because it found a "better" resolution.

***Greer v. Greer***, No. W2009-01587-COA-R3-CV, 2010 WL 3852321 at *6 (Tenn. Ct. App. W.S., filed Sept. 30, 2010)(internal citations omitted).

V.

A.

Father's challenge to the trial court's approach and decision is two-fold: First, he takes the position that the Agreement, never having been court-approved, is not binding on the court. Therefore, he reasons, this case involves an *initial* custody determination. Father essentially asserts that the trial court abused its discretion by finding that the Agreement is binding and by failing to undertake a comparative fitness analysis to determine custody. He asserts that the trial court erroneously accepted the Agreement as binding and approved it without independently assessing the best interest of the Child.

For his second challenge, Father reasons that if the case is treated as a request for a *modification* of custody, the trial court erred (1) in not finding that there was a material change of circumstances and (2) in not then undertaking a comparative fitness analysis to determine custody. Under either scenario, Father concludes that a comparison of the parties to determine the custody arrangement that is in the Child's best interest should result in an award of custody to him. As will be discussed, we disagree with Father on all these points.

B.

As a threshold proposition, it is necessary to determine the precise nature of the modification that Father seeks. Our review persuades us that, in the trial court, Father raised the issue as to who should have custody. As we have noted, the parties without question reached the Agreement setting forth Father's co-parenting time. In so doing, the Agreement also *implicitly* recognized Mother as the primary caregiver. The Child lived with Mother except during the limited periods of Father's co-parenting time. Stated differently, although there was no express award of custody in the present case, it is clear beyond any question that Mother was the de facto primary custodian and that the Agreement is, therefore, tantamount

-6-

to an initial custody award. For this reason, we reject Father's contention that the trial court erred in construing the case as custody modification rather than an "initial" custody setting. We hold that Father essentially conceded this result when he argued for a *modification of custody* at trial and submitted a modified proposed parenting plan in support of his petition for review. Father knew Mother had custody and wanted it changed to him. This conclusion is inescapable.

In his direct testimony, Father asserted that it is in the Child's best interest to live with him and asked the court to award him primary custody. Boiled down, Father asserted that he was not getting all of his scheduled time and contact with the Child pursuant to the Agreement and that this was a substantial change in circumstances that warranted a change of custody. We think this is the correct approach and precisely the one followed by the trial court.

At the outset, we disagree with Father's position that the trial court found that the Agreement is binding. The court expressly found that it was not. During an exchange with counsel, the court observed: "Essentially, if the mediated agreement has never been entered by the Court, it's not binding on the court then." It is clear to us that the trial court did not consider itself bound by the Agreement. We hold that the trial court properly took into consideration the parties' various and competing positions and all of the evidence of the parenting arrangement that the parties had agreed to and put into practice some two years earlier. We disagree that, in doing so, the trial court failed to determine the best interest of the Child. It is true, as Father asserts, that a trial court is charged with evaluating whether an agreed parenting arrangement is in a child's best interest. *See Greer v. Greer*, 2010 WL 3852321 at *7. However, this Court has further observed:

> We do not hold that, in every instance in which a trial court is presented with a mediated parenting plan, the trial court must conduct a full evidentiary hearing. [. . . .]. We hold only that the trial judge, and the trial judge alone, has the solemn duty to determine whether a given parenting arrangement is in the best interest of a child in his charge, and that the record must reflect a sufficient basis for such a determination.

*Fletcher v. Fletcher*, M2010-01777-COA-R3-CV, 2011 WL 4447903 at *10 (Tenn. Ct. App. M.S., filed Sept. 26, 2011).

In the case at bar, the trial court advised the parties, after hearing their respective positions, that the court generally favored enforcing mediated agreements because it viewed them as a representation of the arrangement considered by the parties to be in a child's best

interest at the time of their documented understanding. At the same time, however, the court made it clear that it would not hesitate to "open it up again . . . and change it" or even "do away with that mediated agreement" entirely if the proof showed otherwise. Ultimately, after hearing all of the proof, the trial court expressly found that the Agreement in the case at bar "[was] and [is] in the best interests of the . . . . [C]hild." In concluding its ruling, the court encouraged both parties to be more cooperative concerning the Child. The court stated:

> But y'all need to work together. I mean I'm going to be out of here in two years and eight months and three days, but I don't want to have my successor to have to deal with this young lady (the Child) in here. And there shouldn't be because there's no reason y'all cannot work together. I mean . . . without a doubt, the proof shows that both of you are very good parents, excellent parents.

In the end, the trial court formally approved the Agreement that the parties had entered into and put into practice some two years earlier as being in the Child's best interest. The evidence does not preponderate against its finding. Having determined that the trial court correctly proceeded to consider Father's request for a modification of custody, we consider whether the trial court erred in concluding that there was no change in circumstances sufficient to warrant a change in custody.

## C.

Father asserts that the proof at trial clearly revealed a material change in circumstances – that the parties were not following the Agreement. He urges that he should be awarded primary custody. Tenn. Code Ann. § 36-6-101 (2010) addresses custody determinations and modifications. As relevant to the present case, the statute provides as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, *failures to adhere to the parenting plan* or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B) (emphasis added).

Father specifically asserts that Mother's failure to grant him time and contact with the Child pursuant to the Agreement constitutes a material change in circumstances. Certainly, there was testimony from both parties establishing that, as a result of Father's new job, he was for some time unable to exercise his visits with the Child on alternate Tuesdays. On this point, Father corroborated Mother's testimony that he advised Mother of his scheduling conflict and that he would not be able to see the Child as contemplated by the Agreement. While Father testified he told Mother the situation would be only temporary or "for a while," Mother disputed that this was the message. The proof shows that Father did not continue his regular Tuesday visits during most of 2010. Even after Father completed his training, his attempts to resume his Tuesday visits were sporadic and often without advance notice to Mother. Father agreed that he had been aware of his current, permanent schedule since October 2010, but that he had never provided it to Mother or advised her that he was ready to consistently resume the agreed schedule. At trial, Mother testified that the Child was available on Tuesdays and visits could begin again with "no problem." Father did not dispute Mother's testimony that they generally followed the Agreement and that he had "never missed a weekend" with the Child. With respect to phone calls, the proof was to the effect that although there had been difficulties in the past, including when the young Child was not interested in talking with Father on the phone, the parties had recently worked out an arrangement whereby Father was at least able to call and speak with the Child at the same time and day each week. At the conclusion of the proof, the trial court found that there was no showing of a change in circumstances sufficient to support a change in custody.

Throughout these proceedings, Father insisted that the trial court should have undertaken a statutory comparative fitness analysis. *See* Tenn. Code Ann. § 36-6-106(a)(providing factors to be considered in determining custody). The Supreme Court has observed that a trial court may modify an award of child custody "when both a material change of circumstances has occurred *and* a change of custody is in the child's best interests." *See* **Kendrick v. Shoemake**, 90 S.W.3d 566, 568 (Tenn. 2002) (Emphasis added); **Hoback v. Hoback**, E2007-02777-COA-R3-CV, 2008 WL 4974883 at *5 (Tenn. Ct. App. E.S., filed Nov. 24, 2008). The Supreme Court has clarified that

> this standard requires the trial court to engage in a two-step process to make its final custody determination. First, the court must determine whether a material change in circumstances has occurred after the initial custody determination. Although there are no bright-line rules for determining when such a change has

occurred, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.

Second, after finding that a material change in circumstances has occurred, the trial court must determine whether modification of custody is in the child's best interests using the factors enumerated in Tennessee Code Annotated section 36-6-106. . . .

*Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)(citing *Kendrick*, 90 S.W.3d at 570). In the present case, the trial court heard proof that the parties followed the Agreement until Father's job training prevented him from exercising his alternating Tuesday visits. Although Father's changed schedule was not anticipated when the Agreement was entered into, the proof shows that it was temporary and it was now feasible for Father to spend all of his allotted time with the Child again. "[N]ot all changes in the circumstances of the parties and the child warrant a change in custody." *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006). During this time, Father continued to spend time with the Child during every other weekend and had contact with her by telephone. Here, there was nothing to indicate that the Child's well-being was affected in any "meaningful way." As we noted in *Curtis*:

If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not reexamine the comparative fitness of the parents, *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a "best interests of the child" analysis.

*Curtis,* 215 S.W.3d at 840.

The evidence does not preponderate against the trial court's finding that there was no material change in circumstances. "In the absence of proof of a material change in the child's circumstances, the trial court should not change custody." *Id*.

D.

We now address the trial court's changes to the parenting schedule. At the conclusion of the proof, the court prefaced its ruling by stating:

> All right. I don't see enough change of circumstances here to
> change this, but I'm going to refine it.
>
> And I don't think either of you is going to like it, but I'm going
> to find:
>
> [F]ather's going to have the [C]hild every other weekend. He's
> going to have the [C]hild every Tuesday when he's not working,
> from 10:00 - 5:00. When the [C]hild starts school, 4:00 - 8:00.

Thus, the court left in place the weekend schedule, but increased Father's "every other" Tuesday visits with the Child to *every* Tuesday. Addressing telephone calls, the court further stated:

> I'm going to do this: Thursday nights, every week, [Mother], if
> you've got custody of the [C]hild . . . , I think [Father] has a
> right to communicate with the [C]hild from 7:00 - 8:00 o'clock
> on that Thursday, uninterrupted.

In this manner, the court incorporated the practice that the parties themselves had recently adopted to ensure a designated time for Father to speak with the Child each week.

The court expressly found that no material change in circumstances had occurred that necessitated the discarding of the Agreement or that warranted a revisiting of the parenting arrangement. Instead, the trial court simply refined provisions of the schedule already in place. It has long been held that issues pertaining to custody and visitation address the sound discretion of the trial court. ***Suttles v. Suttles***, 748 S.W.2d 427, 429 (Tenn. 1988); ***Grant v. Grant***, 39 Tenn. App. 539, 286 S.W.2d 349, 350 (Tenn. App. 1954). This Court will not disturb a trial court's judgment on these matters except on a showing of an abuse of discretion. On our considered review of the entire record, we find no such abuse.

VI.

In his final issue, Father challenges evidentiary rulings by the trial court. He points to two instances, which, he submits, involve the improper admission of hearsay statements and another situation when his objection to the relevancy of the solicited testimony was overruled.

First, Father contends that, on direct examination, both Susan Saylor, the Child's maternal grandmother, and Sierra Williams, a friend of Mother's, improperly testified to the

Child's reaction when Father called to speak with her. Ms. Williams testified, in relevant part as follows:

> [Ms. Williams]: Well, she kind of acted like she really didn't want to talk to [Father] . . . though [Mother] would encourage her to. You know, "Hey, this is your father. You talk to him. Tell him about your day."

Similarly, Ms. Saylor said that she had observed the Child's reactions to Father's calls. Ms. Saylor testified that "most every time – not every time, but several times – [the Child] would not even, you know, come to the phone. She wouldn't want to talk." Father asserts that such testimony was clearly inadmissible hearsay that "prejudiced the [trial court] by allowing evidence in pertaining to how the [Child] 'felt' about talking to [Father] via telephone." He concludes that neither witness had personal knowledge of whether the Child wanted to speak with Father, and that their testimony amounted to nothing more than biased opinions about the Child's subjective feelings.

At trial, Father raised hearsay objections when these witnesses testified to *statements Mother made* in response to Father's calls to the Child – essentially that she had encouraged the Child to go to the phone and speak with Father. On appeal, however, Father complains only about the witnesses' testimony relating their own observations of the Child's non-verbal reactions to the calls. We fail to understand Father's challenge to such testimony on hearsay grounds. A hearsay statement is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Such a statement is not admissible unless it is shown to be admissible "as provided by the[] rules [of evidence] or otherwise by law." Tenn. R. Evid. 802. The challenged portions of both Ms. Williams' and Ms. Saylor's testimony, as quoted above, consisted of their own observations of the Child's demeanor and actions in response to Father's calls. Neither witness testified to any statements by the Child, only to their interpretation of her body language or behavior. We find no hearsay and no error in the admission of these two witnesses' testimony.

Father also takes issue with a question asked of him during cross-examination after he admitted that he once notified Mother that he was taking the Child on an out-of-state trip on the day they were leaving. The following exchange took place:

> Counsel: That's pretty short notice, isn't it?
>
> Father: The notice – well, I mean that's why I gave her a notice, saying we were going. It was a long week.

-12-

[Father's counsel]: Your Honor, I object to the relevance of this. There's no requirement that 48 hours' notice be given to go out of state.

[The Court]: Well, you're both being nitpicky that much. Your both are, okay?

[Father's counsel]: I understand. I just object to relevance.

\* \* \*

[The Court]: So, you know, you nitpicked. I'm going to give [opposing counsel] nitpicking, too.

I kind of think it's a little strange to go out of town, take the Child out of State, and let the other parent know the same day.

[Mother's counsel]: And that was my only point. I'm not going any further with it. That's correct.

Father asserts that the "potential prejudice of allowing this irrelevant information would allow a Court to conclude that there is a notice requirement [in the Agreement]." He argues that the only relevant question, in view of the Agreement, was whether Father gave notice, not how much. To be clear, the Agreement contains no requirement that one party notify the other if the Child is being taken out of state.

As Mother correctly contends, the Agreement – the focus of the case – was before the trial court. The court could ascertain for itself that the Agreement did not include a provision for notice regarding out-of-state trips with the Child. We agree with Mother that it is highly improbable that the trial court was mislead into believing that Father had somehow violated a non-existent notice provision in the Agreement. Moreover, in its judgment, the trial court ordered that going forward, each party must provide the other two weeks' notice before taking the Child out of state. To the extent that the question somehow resulted in irrelevant information being permitted into evidence, both parties were equally affected. Even assuming error – an assumption with which we do not agree – any such error was harmless.

-13-

## VII.

   The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, H.A.S. This case is remanded to the trial court, pursuant to applicable law, for the collection of costs assessed below.

              _____
              CHARLES D. SUSANO, JR., PRESIDING JUDGE