IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2018 Session

## JASON PRICE v. BRANDI PRICE CARTER

**Appeal from the Chancery Court for Dyer County**
**No. 09-CV-294    Tony Childress, Chancellor**

_____

**No. W2018-00229-COA-R3-CV**

_____

This case involves a petition to modify a parenting plan to change the primary residential parent. The father sought to be designated as the primary residential parent, citing to the children's excessive absenteeism from school while in the mother's care. The trial court agreed and found that, while the children were doing well in school, they could be doing better and would be less stressed without the problem of their excessive absenteeism. We reverse, finding that the mother had remedied the children's excessive absenteeism from school prior to trial and that the prior absenteeism does not rise to the level of a material change in circumstance warranting a modification of the parenting plan so as to change the designation of the primary residential parent from mother to father.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellant, Brandi Price Carter.

Vanedda Prince Webb, Dyersburg, Tennessee, for the appellee, Jason Price.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Brandi Carter ("Mother") and Jason Price ("Father") divorced in October 2009. Together, they have two minor children ("the Children"), born in May, 2007 and June, 2009. In February 2012, the Dyer County Chancery Court entered an Agreed Permanent Parenting Plan, naming Mother as the Children's primary residential parent. Five years later, on May 25, 2017, Father filed the instant Petition to Modify the Permanent

Parenting Plan, asking the trial court to name him as the Children's primary residential parent.

In the five years between the entering of the parenting plan and Father's petition for modification, Mother and Father both remarried. Following the divorce, Mother married Michael Kimbro, and they moved into a house near her parents in Dyer County. Together, she and Mr. Kimbro have two minor children.[1] Father, in 2014, married his current wife, Jennifer Price. Mother and Mr. Kimbro divorced in the summer of 2016, after which point Mother moved in with her parents.[2] Then, in October 2016, Mother married her current husband, Derek Carter, who lives in Rockwood, Tennessee, which is approximately thirty miles east of Crossville, Tennessee in Cumberland County. Mother, however, continues to live in Dyer County and, since her marriage to Mr. Carter, travels frequently to East Tennessee with the Children to be with him.

In the May 2017 petition for modification, Father raised two claims which he alleged amounted to a material change in circumstance such that it would be in the best interests of the Children that he be designated the primary residential parent. Father asserted that (1) since approximately September 2016, Mother had spent a significant amount of time in or near Crossville, Tennessee and that (2) during the Children's 2015-2016 and 2016-2017 school years at Fifth Consolidated Elementary School ("Fifth Consolidated"), the Children had acquired an excessive number of unexcused absences, which occurred solely during Mother's parenting time.

As to Father's second claim, Jamie McGowan—a records-keeper at Fifth Consolidated testified to the following: during the 2015-2016 school year, one child had 19 absences, 10 of which were unexcused, and 13 incidents of tardy, 12 of which were unexcused, and the other child had 16 absences, 9 of which were unexcused, and 9 incidents of tardy, 8 of which were unexcused, during the 2016-2017 school year, one child had 13 absences, 10 of which were unexcused, and 15 incidents of tardy, 14 of which were unexcused, and the other child had 11 absences and 15 incidents of tardy, all of which were unexcused. During the portion of the 2017-2018 school year that the Children had attended through the date of the underlying trial on December 22, 2017, one child had three unexcused absences, and one incident of tardy, which was unexcused, and the other child had three unexcused absences, and one incident of tardy, which was unexcused.

On July 28, 2017, the first day of the 2017-2018 school year, Father went to Fifth Consolidated "to see if [the Children] had checked in." Once there, he learned that the

---

[1] The older child was in born May, 2012, and the younger was born in May, 2014. At the time of the trial court's February 5, 2018 order, Mother and Mr. Kimbro's two children were ages 5 and 3.

[2] Mother and Mr. Kimbro's parenting plan is not a part of the record on appeal, but testimony in the record does reflect that Mother is the primary residential parent of their two children.

Children were not at school and that SailAway Learning & Academy—a homeschool located in Kingston, Tennessee—had requested records from Fifth Consolidated regarding the Children. Father claimed that Mother, during the pendency of his May 2017 petition for modification and without his permission, attempted to transfer the Children from Fifth Consolidated in Dyer County to SailAway Learning & Academy in Kingston, Tennessee. After learning of this, Father, on July 31, 2017, filed a motion seeking to hold Mother in contempt for violating the February 2012 parenting plan, which provided that Mother and Father were to jointly make educational decisions for the Children. The motion also sought to temporarily modify the existing permanent parenting plan by naming Father the primary residential parent of the Children. A few days later, on August 2, 2017, Father received Mother's formal notice of her intent to relocate with the children to Rockwood, Tennessee.[3] Father responded on August 22, 2017 by filing a Petition in Opposition to Relocation, asserting that the proposed relocation did not have a reasonable purpose, that it would pose a threat of specific and serious harm to the Children, and that Mother's motive for relocating was vindictive with the intent to defeat Father's parenting time. The trial court entered an Agreed Temporary Order on August 30, 2017, providing that, pending Father's May 2017 Petition to Modify the Permanent Parenting Plan, Mother would not relocate with the Children and that they would remain enrolled at Fifth Consolidated.[4] Mother and Father attended mediation on October 18, 2017, but they could not resolve the pending issues.

A hearing was scheduled for December 22, 2017, and the trial court issued its final order on February 5, 2018. In its order, the trial court concluded that Father had established a material change in circumstance that was not foreseeable and that affected the Children's well-being in a meaningful and negative way, and that it was in the best interests of the Children that Father be designated the primary residential parent. The trial court also concluded that Mother was in criminal contempt for willfully disobeying its order regarding major educational decisions. As to the relocation issue, the trial court concluded that Father failed to establish why Mother should not be permitted to relocate and that, "if a material change in circumstances had not been established or if it was not established that it was in the children's best interest that the primary parent designation should be changed[,] the mother would be allowed to relocate." Mother timely appealed.

**ISSUES PRESENTED**

Mother raises two issues on appeal, which we repeat verbatim:

---

[3] According to Mother, only after she and Father discussed her potential relocation to East Tennessee did Father file the May 2017 Petition to Modify the Permanent Parenting Plan. Mother then hired an attorney, who drafted and sent Father the formal notice of her intent to relocate.

[4] All issues regarding contempt raised in Father's July 31 motion were reserved until the final hearing on the Petition to Modify the Permanent Parenting Plan.

1. Whether there is a material change in circumstance that warranted a change of custody.
2. Whether it is in the best interests of the minor children for Father to be named the primary residential parent.

## STANDARD OF REVIEW

In *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013), the Tennessee Supreme Court set out the standards that apply to appellate review of a trial court's resolution of a petition to modify an existing permanent parenting plan:

> In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. Statutory interpretation is a question of law, which we review de novo. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).
>
> A trial court's determinations of whether a material change in circumstance has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d at 732; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

*Armbrister*, 414 S.W.3d at 692-93.

## DISCUSSION

When a parent files a petition to modify custody, the parent seeking the modification must demonstrate "that a material change in circumstances has occurred which makes a change in custody in the child's best interests." *Kendrick*, 90 S.W.3d at 570. Thus, the decision to modify custody is a two-part test. As a threshold issue, the trial court must determine, by a preponderance of the evidence, whether there has been a material change in circumstance since the initial custody determination. *See In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005). If the court finds that a material change in circumstance has occurred, the court must proceed to the second step of the analysis to determine whether the modification sought is in the child's best interest. *In re M.J.H.*,

196 S.W.3d at 744. If the court finds that a material change in circumstance has not occurred, it "is not required to make a best interests determination and must deny the request for a change of custody." *Pippin v. Pippin*, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008) (quoting *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999)).

Tennessee Code Annotated section 36-6-101(a)(2)(B) provides the standard which a petitioning parent must meet to prove a material change in circumstance sufficient for consideration of whether a modification of custody is in the best interest of the child:[5]

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Although there are no bright-line rules for determining whether such a change has occurred, there are several relevant factors to consider: (1) whether the change occurred after the entry of the order sought to be modified; (2) whether the change was not known or reasonably anticipated when the order was entered; and (3) whether the change is one that affects the child's well-being in a meaningful way. *H.A.S. v. H.D.S.*, 414 S.W.3d 115, 123 (Tenn. Ct. App. 2013) (quoting *Cranston v. Combs)*, 106 S.W.3d 641, 644 (Tenn. 2003). Applying the analysis outline above to the present case, we are of the opinion that the trial court erred in its conclusion that Father established by a preponderance of the evidence that a material change in circumstance had occurred for purposes of changing the designation of the primary residential parent.

As the record indicates, for the 2015-2016 and 2016-2017 school years, the Children accumulated a large number of absences, the majority of which were unexcused. In its order, the trial court noted:

> Being absent from school can cause a child to fall behind academically, and the more absences there are the more the child falls behind. A child who is a strong academic student can often catch themselves up and can overcome

---

[5] A different standard applies when a parent seeks modification of a residential schedule but not the designation of the primary residential parent. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C). It is "easier to establish that a material change in circumstances has occurred" when the parent only seeks to modify the residential parenting schedule. *Armbrister*, 414 S.W.3d at 703; *see also Burnett v. Burnett*, M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Aug. 31, 2015) ("The threshold for establishing a material change in circumstance where the issue before the court is a modification of the residential parenting schedule is much lower.").

absences, but a child who is not as strong academically will often struggle. Even though a child who struggles academically may have better than average grades that child's academic success would often be better had the child not been absent.

The trial court concluded Father "established that [Mother's] actions caused the children to be absent from school on more than one occasion when there was not a legitimate reason for them to be absent." As to whether these absences occurred after the entry of the order implementing the current parenting plan, the trial court concluded that the Children's absences occurred when Mother traveled to see her new husband and to enroll the Children in a home school, both in East Tennessee. The trial court also concluded that it "simply could not have foreseen that these instances of avoidable unexcused absences would occur when it entered the current parenting plan." The trial court, however, improperly concluded that these absences affected the Children's well-being in a meaningful way.

Although we agree with the trial court that school absences can cause a child to fall behind academically, the evidence presented at trial clearly indicates that such a situation is not present here. Greg Cherry, the principal at Fifth Consolidated, testified that the Children's absences were not keeping them from progressing in school or from mastering their subjects. To the contrary, Mr. Cherry testified that the Children are average to above-average students and that they are each "mastering their subjects." The trial court even admitted as much, finding that "both of the children are doing well academically[.]" The trial court, however, reached the conclusion that the Children "could be doing even better and would not have to endure the stresses of playing academic catchup if they were not absent so much[.]" As a general matter, the Court agrees with this conclusion—and we certainly do not condone Mother's actions in causing the Children's absenteeism over the last few years—but the possibility that the Children could be "doing even better" academically does not rise to the level of a material change in circumstance warranting a modification of the parenting plan so as to change the designation of the primary residential parent from Mother to Father. This Court reached a similar conclusion in *In re Kaitlyn M.W. v. Crystal D.S.P.*, No. W2010-00301-COA-R3-CV, 2010 WL 5541054 (Tenn. Ct. App. Oct. 13, 2010). There, the father filed a petition to modify the parenting plan to designate him as the primary residential parent. *Id.* at *2. In his petition, he maintained that the child's educational needs were not being met because, while under the mother's care, the child was excessively absent and tardy to school. *Id.* The trial court found no material change in circumstance warranting a change of custody. *Id.* at *5. We agreed, noting that, although it was undisputed that the child had excessive absences and tardy days for two academic school years, the child's absenteeism problems were largely resolved by the time of trial. *Id.* at *7. Here, during the 2015-2016 school year, one child had 10 unexcused absences and 12 unexcused incidents of tardy, while the other child had 9 and 8, respectively, during the 2016-2017 school year, one child had 10 unexcused absences and 14

unexcused incidents of tardy, while the other child had 11 and 15, respectively. The Children, like the child in *In re Kaitlyn M.W.*, were excessively absent from and tardy to school for two academic school years. However, during the 2017-2018 school year, up to the time of the trial, each child had only 3 unexcused absences and 1 unexcused incident of tardy. These three absences occurred during the first three days of the school year because the Children had not yet returned from East Tennessee. Since returning from East Tennessee, however, the Children have not had a single unexcused absence, and Mother testified at trial that she would make sure the Children were neither absent nor tardy in the future. Moreover, there was no proof in the record that the children's academic performance was negatively affected by the earlier absences. As this court found in *Kaitlyn M. W.*, we are of the opinion that the Children's problems of absenteeism and tardiness had been largely resolved by the time of the trial below and, accordingly, do not rise to the level of constituting a material change in circumstance for purposes of changing the designation of the primary residential parent from Mother to Father.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order changing the designation of primary residential parent from Mother to Father.

_____
ARNOLD B. GOLDIN, JUDGE