FILED

12/08/2025

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2025 Session

## ESTHER LYNN BOWMAN v. PAUL CHAPMAN SMITH, JR

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-21-44          Kimberly Lund, Chancellor**

———————————————————

### No. M2025-00173-COA-R3-CV

———————————————————

This appeal concerns a father's petition to modify a permanent parenting plan to name him as the primary residential parent for his two daughters. The trial court found a material change in circumstance based on, *inter alia*, the mother's remarriage and frequent out-of-state travel, and it concluded that modification was in the children's best interests. This appeal followed. The mother contends that the evidence preponderates against the trial court's finding of a material change in circumstances. We disagree and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Tracy P. Knight, Clarksville, Tennessee, for the appellant, Esther Duvall Bowman.

Stacy A. Turner, Clarksville, Tennessee, for the appellee, Paul Chapman Smith, Jr.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Esther Lynn Bowman ("Mother") and Paul Chapman Smith, Jr. ("Father") married in 2004 and had two daughters: Kyrstin, born in 2009, and Kennedy, born in 2013 (collectively, "the Children"). During their marriage, Father was an active-duty service member in the United States Army, and Mother was a stay-at-home mom.

The parties separated in 2019, and Mother moved with the Children to her father's house in Hendersonville, Tennessee. Mother then enrolled in nursing school and began working part-time at a hospital.

In mid-2020, Mother began dating another service member, Austin Bowman. Mr. Bowman lived in Temple, Texas, and he had joint custody of two children from a past marriage. A few months after that, Father obtained a transfer to Fort Campbell and moved into an apartment in Montgomery County, Tennessee, about 45 minutes away from Mother. Father then filed a complaint for divorce based on irreconcilable differences.

In April 2021, the trial court entered a final divorce decree and a permanent parenting plan that named Mother as the Children's primary residential parent and gave Father 80 days of residential parenting time.

Shortly after that, Father got married to another service member, Kathryn Smith. Like Mother's boyfriend, Ms. Smith had joint custody of two children from a past marriage. Father then bought a five-bedroom house near Clarksville, Tennessee, and obtained a position in the Army that would not require him to deploy overseas. Father was also planning on retiring soon. Thus, in December 2021, Father filed a petition to increase his residential time with the Children. After attending mediation, Mother agreed to increase Father's residential parenting time to 107 days per year. The trial court memorialized the agreement by entering a new parenting plan in January 2022.

Over the next two years, Mother graduated and got a job as a pediatric nurse at Vanderbilt Medical Center, where she worked three 12-hour night shifts per week. Mother also got married to Mr. Bowman and moved her belongings to Mr. Bowman's home in Texas. Like Father, Mr. Bowman had a five-bedroom house where each child had a room. Thereafter, Mother traveled to Texas twice a month on average, and she often took the Children with her. When in Tennessee, Mother and the Children continued to stay at the maternal grandfather's house, where Mother shared a room with Kennedy.

Meanwhile, Father retired from the military and took a job flying medevac helicopters out of Humboldt, Tennessee. Father worked four day shifts, had 24 hours off, and then worked three night shifts and had seven days off. Father continued to live in Montgomery County with his new wife and stepchildren, but he often spent the night in Jackson, Tennessee, due to the distance between his home and the airfield.

In May 2024, Mother filed a petition to relocate with the Children to Texas. Father opposed the petition and filed a counterpetition to designate him as the Children's primary residential parent. After an evidentiary hearing, the trial court denied Mother's petition and granted Father's. The new parenting plan designated Father as the Children's primary residential parent and gave Mother 120 days of residential time per year. But after the trial court entered its order, Mother announced that she was not moving to Texas after all, and she asked the court to reinstate the 2022 parenting plan. Father opposed the motion and asserted that the changes were justified even if Mother stayed in Tennessee.

The trial court then suspended the new parenting plan and ordered the parties to attend mediation. When that was unsuccessful, the court entered a final order confirming

its earlier decision. Even though Mother was not moving to Texas, the court found a material change in circumstances based on, *inter alia*, Mother's failure to obtain her own housing and her constant travel. The court also noted that Father had increased his capacity to care for the Children by retiring from the military and by obtaining more suitable housing.

Based on these and other findings, the trial court entered a fourth parenting plan that designated Father as the primary residential parent and gave Mother 146 days of visitation.

This appeal followed.

## ISSUES[1]

Mother raises two issues on appeal:

(1) Whether the trial court erred in finding a material change in circumstances had occurred that warranted changing the primary residential parent designation to Father.

(2) Whether Mother should be awarded her attorney fees on appeal.

Father also asks for an award of his attorney fees on appeal.

## STANDARD OF REVIEW

Whether a material change in circumstances has occurred is a question of fact. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692–93 (Tenn. 2013). We review a trial court's determinations on questions of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. *In re Kansas B.*, 664 S.W.3d 22, 28 (Tenn. Ct. App. 2022) (citation omitted). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citations omitted).

---

[1] Mother has not appealed the trial court's denial of her petition to relocate. Accordingly, the only judgment at issue in this appeal is the trial court's modification of the parenting plan to name Father as the primary residential parent.

ANALYSIS

## I. MATERIAL CHANGE IN CIRCUMSTANCES

Mother contends the trial court erred in modifying the parenting plan because Father failed to prove the existence of a material change of circumstances that affects the Children's well-being in a meaningful way.

In divorce actions involving minor children, the trial court must incorporate a permanent parenting plan into the final divorce decree. Tenn. Code Ann. § 36-6-404(a). The parenting plan must include a residential schedule for each child, *id*. § 36-6-404(b), and it must "designate the parent with whom the child is scheduled to reside a majority of the time as the primary residential parent," *id*. § 36-6-410(a). This designation is "[s]olely for the purpose of all other state and federal statutes and any applicable policies of insurance that require a designation or determination of custody" and "shall not affect either parent's rights and responsibilities under the parenting plan." *Id*.

Once the divorce decree becomes final, the trial court cannot re-evaluate its designation of the primary residential parent unless the parent seeking modification proves "by a preponderance of the evidence a material change in circumstance." *Id*. § 36-6-101(a)(2)(B)(i). "The finding that a material change in circumstances has occurred triggers the re-examination of the child's best interests in light of the existing circumstances of the parties and the child." *Gallagher v. Adkins*, No. 87-342-II, 1988 WL 34085, at \*7 (Tenn. Ct. App. Apr. 15, 1988). But "[i]f no material change in circumstances has been proven, the trial court 'is not required to make a best interests determination and must deny the request for a change of custody.'" *Clark v. Arthur*, No. M2005-01719-COA-R3CV, 2007 WL 1319264, at \*4 (Tenn. Ct. App. May 4, 2007) (quoting *Kellett v. Stuart*, 206 S.W.3d 8, 15 (Tenn. Ct. App. 2006)).

A change in circumstance is material if it affects the child's well-being. *McClain v. McClain*, 539 S.W.3d 170, 188 (Tenn. Ct. App. 2017) (citation omitted). But "[a] material change of circumstance does not require a showing of a substantial risk of harm." Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). The change must have occurred after the entry of the custody order sought to be modified, must not have been reasonably anticipated when the underlying decree was entered, and must affect the children's well-being in a meaningful way. *See, e.g.*, *H.A.S. v. H.D.S.*, 414 S.W.3d 115, 123 (Tenn. Ct. App. 2013).

Here, the trial court found a material change in both Mother's and Father's circumstances:

> In examining the Father's higher burden of proof as it relates to the finding of a material change of circumstances to warrant modification of the children's PRP designation, the Court finds that such a material change of circumstances has been proven by a preponderance of the evidence.

. . . .

As noted by the Court in prior orders, there are concerns about decisions being made by the Mother which drastically impact the children. Overall, testimony provided by the Father was more credible than that provided by the Mother. Despite the current stressors being placed on the children by their parents, they appear to be well-adjusted. The dysfunction in this case is largely related to the selfish behavior of adults. The Court does have concerns regarding decisions being made by the Mother which drastically impact the children and appear as though they are not well planned.

The Mother has chosen to reside with her stepmother and father for approximately 4 years, making no effort to relocate to a home providing adequate space for her children despite having the ability to do so and this being a known stressor for the children. Instead of seeking alternate housing, the Mother chose to travel to Texas approximately 36 times in 2024 as of the October court date. The Court finds the Mother's credibility to be suspect at best. Testimony from the Mother was that she had been looking for housing in Tennessee, but when her current husband testified, he stated that they had not in fact been looking for housing in Tennessee. Further Mr. Bowman seemed to have no interest in moving to Tennessee as his children and family are in Texas.

The Court finds that since the original parenting plan was implemented, there has been a material change in circumstances warranting not only a modification of the residential schedule, but of the PRP designation. The Father is now retired from the military, has suitable housing for the children, provides significantly more structure and supervision for the children and appeared credible in his desire to facilitate the relationship between the children and their mother.

Mother argues that Father's retirement and "suitable housing" cannot provide a basis for modifying custody because Father was planning his retirement and was living in his current home before the 2022 parenting plan was entered. We agree.

As stated, to trigger the reexamination of the primary residential parent designation, the alleged change in circumstance must have occurred "after the entry of the custody order sought to be modified," and it "must not have been reasonably anticipated when the underlying decree was entered." *McClain*, 539 S.W.3d at 188 (citation omitted). The underlying decree in this case was entered in January 2022. At trial, Father testified that he bought his house in September 2021 and that he filed his first petition to modify the residential schedule in December 2021 because, *inter alia*, he "knew that [he] was going

- 5 -

to have an upcoming retirement." Thus, Father's housing and retirement cannot form the basis for re-evaluation of the primary residential parent designation.

Still, Father contends that there has been a material change in circumstances due to Mother's new work schedule, remarriage, and constant travel to Texas.

We conclude that the preponderance of the evidence fails to show that Mother's new work schedule at Vanderbilt Medical Center is a change in circumstances that affects the Children's well-being. In reaching this conclusion, we find persuasive the Tennessee Supreme Court's decision in *Kendrick v. Shoemake*, 90 S.W.3d 566 (Tenn. 2002). There, the Court concluded that the mother's employment on the night shift did not affect the child's well-being in a meaningful way when there was evidence that the mother's schedule allowed her to spend more time with the child during the day. *Id*. at 571. This case presents a nearly identical change in circumstance.

After the 2022 parenting plan was entered, Mother started working three 12-hour night shifts per week, from 6:30 p.m. to 6:30 a.m., and four weekend shifts every six weeks. Mother testified that working the night shift gives her more time with the Children than working the day shift, which runs from 6:30 a.m. to 7:00 p.m. According to Mother, she picks up the Children from school every day when she has them. On mornings when Mother has not worked the night before, she fixes their breakfast and lunch and takes them to school. If she has a shift later that day, she prepares the Children's breakfast and lunch for the next day and leaves the house at 5:30 p.m. The next morning, the Children ride with friends to school. After her shift, Mother gets home around 8:00 a.m., sleeps for a few hours, and then picks up the Children. Mother's stepmother, Joye Duvall, testified that she and/or Mother's father are always home while Mother is at work and that they make sure the Children get up and out the door on mornings when Mother is not there.[2] Accordingly, the preponderance of the evidence fails to show that a material change in circumstances has occurred based on Mother's new employment schedule. *See L.A.S. v. C.W.H.*, No. E2021-00504-COA-R3-JV, 2022 WL 17480100, at *13 (Tenn. Ct. App. Dec. 7, 2022) ("[T]he fact that the custodial parent has an atypical work schedule, in and of itself, should not necessitate a change in the designation of primary residential parent, if the other factors do not weigh in favor of such a change." (citation omitted)).

However, we agree with the trial court's determination that a material change occurred due to Mother's remarriage and her constant travel to Texas. "A marriage of either parent does not, in and of itself, constitute a material change of circumstances warranting a change in custody. It may, however, be a factor where the new spouse changes the home

---

[2] In his appellate brief, Father alleges without citation to the record that Mother leaves the Children "alone to care for themselves at night." The trial court found the evidence on this point was equivocal.

environment of the child." *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007) (*Tortorich v. Erickson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984)).

Mother argues that her remarriage did not change the Children's home environment because Mr. Bowman lives in Texas. Be that as it may, Mother testified that—since getting remarried in 2023—she moved her belongings to Mr. Bowman's house, set up bedrooms for the Children in Mr. Bowman's house, and took the Children to Mr. Bowman's house once per month. Mr. Bowman also testified that he came to Tennessee 15 to 20 times per year. Further, the trial court found that Mr. Bowman had no plans to move to Tennessee; thus, it was reasonably foreseeable that Mother's intrastate commutes would continue and that Mr. Bowman would be a regular fixture in the Children's "home environment."

The trial court also expressed "serious concerns" about the Children's exposure to Mr. Bowman. The court found that Mr. Bowman had an "extremely contentious co-parenting relationship with his ex-wife" and that he was "unable to put aside angst he holds for his ex-wife for the betterment of his own children." Thus, the court was not "persuaded that he [would] be there for Krystin and Kennedy when he struggles with doing so for his own children." The court further concluded that "[t]he relationship between Mr. Bowman and his ex-wife d[id] not present itself as a healthy scenario for Krystin and Kennedy to be exposed to." The court heard testimony from Mr. Bowman's ex-wife, who said that Mr. Bowman had been physically and verbally abusive during their marriage, and the court found that "Mr. Bowman made concerning statements during his own testimony which caused the Court to question his temperament." The court also found that Mother's frequent travel with the Children to visit Mr. Bowman in Texas was "significant," given that the Children "expressed a dislike for the shuttling back and forth."

We conclude that the evidence does not preponderate against these findings or the trial court's conclusion that Mother's remarriage was a material change in circumstances that affected the Children in a meaningful way. *See In re T.C.D.*, 261 S.W.3d 734, 745 (Tenn. Ct. App. 2007) (finding remarriage affected child's well-being in a meaningful way when, *inter alia*, there was evidence that the stepfather "was an abusive husband in his previous marriage" and finding that the stepfather's "conduct as a father to his own child" was "instructive" because the stepfather "admitted that he could not remember the last time he paid child support").

As noted earlier, "the finding that a material change in circumstances has occurred triggers the re-examination of the child's best interests in light of the existing circumstances of the parties and the child." *Gallagher*, 1988 WL 34085, at *7. However, Mother did not appeal the trial court's determination concerning the Children's best interests. Thus, the best interest factors are not at issue in this appeal.

Based upon the foregoing, we affirm the judgment of the trial court.

## II. ATTORNEY'S FEES

Because Mother did not prevail on appeal, her request to be awarded her attorney fees on appeal is denied.

For his part, Father has asked for an award of his appellate attorney's fees under Tennessee Code Annotated § 27-1-122,[3] which authorizes appellate courts to award damages against an appellant when the appeal "was frivolous or taken solely for delay." Tenn. Code Ann. § 27-1-122. A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). "Any such award rests in the appellate court's sound discretion." *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017). But "[t]his discretion is exercised 'sparingly so as not to discourage legitimate appeals.'" *Id.* (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)).

Exercising our discretion, we conclude this appeal was not frivolous or taken only for delay. We therefore decline to award attorney's fees to Father.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Esther Lynn Bowman.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[3] At oral argument, Father's attorney asserted that Father was also entitled to an award of fees under Tennessee Code Annotated § 36-5-103(c), which gives us discretion to award reasonable attorney's fees to the prevailing party in any "proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children." Tenn. Code Ann. § 36-5-103(c); *see Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008) (citations omitted). We conclude that Father waived this issue by not raising it in his appellate brief. *See Christie v. Christie*, No. M2012-02622-COA-R3CV, 2014 WL 4293966, at *6 (Tenn. Ct. App. Aug. 28, 2014) ("Issues initially raised at oral argument are not properly presented for review in accordance with this court's rules.").