IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2020

## APRIL MICHELLE MCADAMS v. CHARLES ALAN MCADAMS

**Appeal from the Circuit Court for Knox County
No. 142189    Gregory S. McMillan, Judge**

_____

### No. E2019-02150-COA-R3-CV

_____

This case involved a petition to modify the parties' parenting plan to change the primary residential parent. The father sought to be designated as the primary residential parent of his minor child, alleging, among other things, that the child's sibling was violent, that the mother had moved to a new county and enrolled the child in a new school, that he never received notice from the mother regarding the child's medical appointments, and that the mother intentionally interfered with his and the child's relationship. Because mother was not listed in father's response to mother's interrogatory—which specifically asked for a list of all potential trial witnesses—the trial court prohibited father's counsel from calling mother as a witness during father's case-in-chief. The trial court, however, allowed father to submit mother's deposition as an exhibit and also allowed father to call mother to testify as to events that had occurred since her deposition had been taken. At the close of father's proof, mother's counsel moved for a directed verdict, which the trial court granted, finding that none of the incidents relied upon by father constituted a material change in circumstances. Construing the trial court's order as if it were an order granting a motion for involuntary dismissal, and concluding that barring father from calling mother as a witness in his case-in-chief was harmless error by the trial court, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Mital D. Patel and Julie D. Eisenhower, Knoxville, Tennessee, for the appellant, Charles Alan McAdams.

JoAnn Lehberger and Kaitlyn E. Dean, Knoxville, Tennessee, for the appellee, April Michelle McAdams (Barton).

## OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

April McAdams ("Mother") and Charles McAdams ("Father") were divorced by the Circuit Court for Knox County (the "trial court") by a Final Judgment of Divorce entered on June 29, 2018. The final judgment approved and adopted a mediated Marital Dissolution Agreement (the "MDA") and a mediated Permanent Parenting Plan (the "PPP"), which named Mother the primary residential parent. At the time of the divorce, Mother and Father lived in Knox County, Tennessee with two minor children, Blake, born in March 2001, and X.M.[1] (the Child"), born in June 2005. As part of the parties' MDA and PPP, Mother was awarded 365 days of parenting time with Blake[2] and 225 days of parenting time with the Child. Father was allocated the remaining 140 days of parenting time with the Child. Following the parties' divorce, Mother moved with the children to Roane County, Tennessee.

On May 2, 2019, Father filed a Petition to Modify the PPP (the "Petition"), asserting that a material change in circumstances had occurred since the parties' divorce and that it was in the Child's best interest that Father be designated the Child's primary residential parent.[3] Specifically, Father asserted, among other things, the following: (1) that the Child had been physically injured by Blake and that it was unsafe for the Child to live in the same home as Blake; (2) that Mother had moved to Roane County and enrolled the Child in a new school farther away from Father's home; (3) that Mother had failed to notify Father about the Child's non-emergency medical appointments; and (4) that by limiting the Child's cell phone usage during her parenting time, Mother was attempting to interfere with Father's relationship with the Child. Mother responded to the Petition on August 14, 2019, in large part denying Father's allegations therein. Mother admitted that she had moved to Roane County but that her residence was within the permitted fifty-mile radius of Father's residence. Mother also admitted that she took the Child's cell phone away at times as a form of discipline, but she denied that doing so was to intentionally interfere with Father's relationship with the Child.

A trial on the Petition was held on October 9 and 15, 2019. At the beginning of his case-in-chief, Father's counsel attempted to call Mother as the first witness; however, Mother's counsel objected, asserting that Father had failed to list Mother in his response to an interrogatory propounded by Mother, which requested the following information: "Please list all witnesses you intend to call at trial, giving their names, addresses, and a short statement of what you expect their testimony to be." In his response, Father listed

---

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identities.

[2] Father did not seek any parenting time with Blake because, according to Father, Blake did not want "to have anything to do with [Father]."

[3] At the time Father filed the Petition, Blake had reached the age of majority.

the Child, his new wife Alicia McAdams, and Nan Buturff, who had performed a psychological assessment on the Child, but he did not list Mother. Following a brief exchange between the trial court and the parties' attorneys regarding the rules of discovery, the trial court ultimately ruled from the bench as follows: "I'm not going to let you call her in your case-in-chief." Father's counsel then called Father as the first witness. Towards the end of the first day of trial, Father's counsel requested to tender Mother's deposition testimony as an exhibit to the record. Mother's counsel raised the same objection, but the trial court ultimately permitted Father's counsel to tender the deposition as an exhibit at trial.

On the second day of trial, October 15, 2019, Father's counsel asked the trial court to reconsider its decision and to allow Mother to testify in Father's case-in-chief. The trial court asked Father's counsel what Mother's in-court testimony would cover that was not already contained in her deposition testimony and whether or not Mother's testimony would be cumulative. Father's counsel asserted that there were events that had occurred since Mother's deposition—which was taken on September 23, 2019—and that some items in her deposition needed to be "cleared up." Ultimately, the trial court ruled that Father's counsel could call Mother to testify in Father's case-in-chief, but only as to the events that had occurred since the taking of her deposition on September 23, 2019.

At the close of Father's case-in-chief, Mother moved for a directed verdict, asserting that Father had failed to satisfy his burden that a material change in circumstances had occurred. Ultimately, the trial court granted the motion. Ruling from the bench, the trial court found that the Child's preference was not a material change in circumstances, considering the fact that the Child had expressed a preference to live with Father prior to the entry of the final decree of divorce. As to Father's allegations regarding the alleged violent propensities of Blake, the trial court found that the incidents raised by Father did not amount to a material change in circumstances, but rather were incidents of "normal teenage provocation between siblings." As to Father's contention that Mother intentionally interfered with Father's relationship with the Child by taking away his cell phone, the trial court found that there was no proof that Mother did so with the intent of interference and, thus, did not amount to a material change in circumstances. Further, the trial court found that neither Mother's move to Roane County nor the Child's subsequent enrollment in a new school amounted to a material change in circumstances. Mother requested an award of attorney's fees, but the trial court found that it could not fault Father for bringing the case and that attorney's fees were not appropriate. The trial court entered its Findings of Fact, Conclusions of Law, and Order on November 6, 2019. Father timely filed a notice of appeal.

## II. ISSUES PRESENTED

As we perceive it, Father raises four issues for our review on appeal, which we restate as follows:

1. Whether the trial court erred in granting Mother's oral motion for a directed verdict at the conclusion of Father's case-in-chief.
2. Whether the trial court erred in finding no material change in circumstances to support a modification of the primary residential parent.
3. Whether the trial court abused its discretion in not allowing Father's counsel to call Mother to testify during his case-in-chief.
4. Whether this Court should award Father attorney's fees, court costs, and discretionary costs incurred at trial and on appeal.

Mother requests that this Court award her attorney's fees incurred on appeal.

### III. STANDARD OF REVIEW

Ascertaining the appropriate standard of review in this case requires us to address Father's first issue on appeal. As noted above, the trial court granted Mother's oral motion for directed verdict at the close of Father's case-in-chief, dismissing Father's Petition. While it is not entirely clear, it appears from the record that the trial court analyzed Mother's oral motion to dismiss the Petition as one for a directed verdict. However, both parties agree on appeal that the proper motion should have been one for involuntary dismissal pursuant to Rule 41.02(2) of the Tennessee Rules of Civil Procedure.

A Rule 50 motion for a directed verdict differs markedly from a Rule 41.02(2) motion for involuntary dismissal. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). The most obvious difference between the two is that a motion for a directed verdict has no place in a bench trial while a motion for involuntary dismissal has no place in a jury trial. *Id*. Beyond that procedural difference, the two motions serve different purposes and require the court to employ substantially different methods of analysis. *Id*. A motion for a directed verdict presents the legal question of whether the non-moving party has presented sufficient evidence to create an issue of fact for the jury. *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000). In answering that question, the court may not weigh the evidence or evaluate the credibility of witnesses. *Burton*, 129 S.W.3d at 520. Rather, it must review the evidence in the light most favorable to the nonmoving party, allow the nonmoving party the benefit of all reasonable inferences, and disregard all evidence contrary to the nonmoving party's position. *Id*. A motion for involuntary dismissal, on the other hand, involves a totally different analysis. In ruling on a motion for involuntary dismissal, the court may "impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *See Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007). If the court finds that the evidence is not sufficiently persuasive to preponderate in the nonmoving party's favor, then the case should be dismissed. *Id*.

Despite the differing methods of analysis associated with the two motions, a trial court's grant of a motion for a directed verdict in a bench trial does not necessarily require

reversal on appeal.  Because less certainty is required to grant a motion for involuntary dismissal than is required to grant a motion for a directed verdict, *see Burton*, 129 S.W.3d at 520, this Court has frequently resolved such errors by simply construing the trial court's order as if it were an order granting a motion for involuntary dismissal.  *See, e.g.*, *Parsons v. Parsons*, No. W2016-01238-COA-R3-CV, 2017 WL 1192111, at *5 (Tenn. Ct. App. Mar. 30, 2017); *Nazi v. Jerry's Oil Co., Inc.*, No. W2013-02638-COA-R3-CV, 2014 WL 3555984, at *4 (Tenn. Ct. App. July 18, 2014); *Wilson v. Monroe Cty.*, 411 S.W.3d 431, 439 (Tenn. Ct. App. 2013); *Main Street Market, LLC v. Weinberg*, 432 S.W.3d 329, 336 (Tenn. Ct. App. 2013).  We see no reason to deviate from that practice in this case. Therefore, we will review the trial court's factual findings using the standard outlined in Rule 13 of the Tennessee Rules of Appellate Procedure.  As we have explained:

> This court uses the familiar Tenn. R. App. P. 13(d) standard to review a trial court's disposition of a Tenn. R. Civ. P. 41.02(2) motion because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence.  Thus, we must review the record on appeal de novo with a presumption that the trial court's findings are correct.  We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case.  We give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses.

*Burton*, 129 S.W.3d at 521 (internal citations omitted).  We review the trial court's conclusions of law de novo with no presumption of correctness.  *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013).

## IV. DISCUSSION

### A. Modification of Parenting Plan to Change Primary Residential Parent

Turning to the substantive merits of the case, we next address Father's argument that the trial court erred in finding that he failed to present sufficient evidence of a material change in circumstances to support a modification of the primary residential parent.  A request to modify the primary residential parent or residential parenting schedule of an existing parenting plan requires a two-step analysis.  *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003).  First, the party petitioning to change the parenting plan must establish that a material change in circumstances has occurred.  *In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005).  If the court determines that a material change in circumstances has occurred, then it must determine whether the modification is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002).  If the court determines that a material change in circumstances has not occurred, then it is not required to make a best

- 5 -

interest determination and must deny the request for a modification. *Pippin v. Pippin*, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008). Thus, the threshold issue in every case in which a party seeks to modify an existing primary residential parenting arrangement is whether a material change in circumstances has occurred. *In re M.J.H.*, 196 S.W.3d at 744.

Tennessee Code Annotated section 36-6-101(a)(2)(B) provides the standard which a petitioning parent must meet to prove a material change in circumstances sufficient for consideration of whether a modification of custody is in the best interest of the child:[4]

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B). Although there are no bright-line rules for determining whether such a change has occurred, there are several relevant factors to consider: (1) whether the change occurred after the entry of the order sought to be modified; (2) whether the change was not known or reasonably anticipated when the order was entered; and (3) whether the change is one that affects the child's well-being in a meaningful way. *H.A.S. v. H.D.S.*, 414 S.W.3d 115, 123 (Tenn. Ct. App. 2013). "Not every change in a child's life or the life of his or her parents rises to the level of a material or significant change warranting a change in his or her primary residential parent." *In re Gunner F.*, No. M2016-01650-COA-R3-JV, 2017 WL 2438572, at *2 (Tenn. Ct. App. June 6, 2017). "Once the court has made an initial determination of custody, it is generally reluctant to change that determination unless it is clear that such a modification is necessary." *Canada v. Canada*, No. W2014-02005-COA-R3-CV, 2015 WL 5178839, at *4 (Tenn. Ct. App. Sept. 4, 2015). After our review of the evidence and application of the above analysis, we conclude that none of the circumstances upon which Father relies to support his Petition constitute a material change in circumstances for purposes of modifying the primary residential parent.

---

[4] A different standard applies when a parent seeks modification of a residential schedule but not the designation of the primary residential parent. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C). It is "easier to establish that a material change in circumstances has occurred" when the parent only seeks to modify the residential parenting schedule. *Armbrister v. Armbrister*, 414 S.W.3d 685, 703 (Tenn. 2013) (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007)); *see also Burnett v. Burnett*, M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015) ("The threshold for establishing a material change in circumstance where the issue before the court is a modification of the residential parenting schedule is much lower.").

As to Father's allegations that the Child was in danger by living with Blake and was frightened by him, the trial court determined that the incidents between Blake and the Child amounted to nothing more than "normal teenage provocation between siblings". At trial, the Child testified that the "worst incident" between Blake and him was when Blake broke the Child's arm in November 2018. Both Mother and the Child testified as to the circumstances surrounding this incident, which the trial court recounted as follows:

> Their testimony revealed that the Child and Blake were each making fun of the other's biological father. The Mother was present and was telling them to stop. They did not stop, and the Child reached over to Blake and struck Blake on the head in an area where Blake had previously had staples and received a scar, which was known by the Child to be tender. Blake then chased the Child up the stairs of the home, with the Mother following close behind them both. At the top of the stairs, Blake pushed the Child. The Child fell backward, and broke his arm in the process of the fall. The Court finds this incident not to be some sort of assault or an intentional act, but, at best, an accident.

Further, the Child testified that he became afraid of Blake following this incident, but the trial court found that his subsequent actions did not support this testimony. Citing to another portion of the Child's in-court testimony, the trial court noted that, following the November 2018 incident, the Child confronted Blake in the doorway to Blake's room. Blake asked the Child to leave and, when the Child refused, Blake pushed him. According to the trial court, "[t]hese actions of [the Child] are inconsistent with the actions of a person who was fearful that [Blake] would act violently and assaultively [sic] to confrontation." We agree that the incidents between the Child and Blake do not amount to a material change in circumstances; rather, they are, as noted by the trial court, "normal teenage provocation[s] between siblings[.]"

Additionally, Father cites to *In re T.C.D.* to support his argument that Mother's home has become an unsafe environment for the Child. There, the mother of the child at issue married a man with a markedly violent past—including a recent felony child abuse conviction and a history of domestic violence—which this Court ultimately determined was a material change in circumstances. *See In re T.C.D.*, 261 S.W.3d 734, 746 (Tenn. Ct. App. 2007). The facts in *In re T.C.D.*, however, are clearly distinguishable from those presently before us; there is no evidence in the record that Blake has a criminal record or that Blake ever intentionally harmed the Child. Father's reliance on *In re T.C.D.* is, therefore, misplaced.

As to Father's argument that Mother exhibited a "pattern of intentional interference" by hindering the Child's communication with Father, the trial court made the following findings of fact:

The Father alleged the Mother interfered with his relationship with the Child after the divorce by taking the Child's cell phone away. Parents are allowed to make decisions about the things a child may or may not have. There was no testimony of Mother that admitted, and nothing of any type that would indicate, that it was solely to interfere with Father and the Child communicating. There was testimony that the Father received all of his calls with the Child after the divorce, with one (1) exception. That one missed phone call is not significant to the Court's ruling.

After our review of the record, we agree with the trial court's findings. While Mother admitted that, at times and for disciplinary purposes, she took away her sons' cell phone following the divorce in June 2018, she also stated that the Child always had a phone available in order to communicate with Father. The Child testified to the same at trial, admitting that Mother provided a cell phone for him to use if he ever needed a phone. Moreover, as this Court has stated in the past, while parents with joint custody of a child "have equal rights and responsibilities regarding major decisions" such as "the child's education, upbringing, religious training, non-emergency healthcare, and general welfare[,] . . . [t]he parent with whom the child is residing at the time must make immediate and day-to-day decisions regarding discipline, grooming, diet, activities, scheduling social contacts, and emergency care." *Swett v. Swett*, No. M1998-00961-COA-R3-CV, 2002 WL 1389614, at *6 (Tenn. Ct. App. June 27, 2002). Accordingly, the evidence does not support Father's argument that Mother intentionally interfered with the Child's and Father's communication.

In further support of his argument that Mother exhibited a "pattern of interference" with his and the Child's relationship, Father argues that Mother was unavailable to the Child during her work schedule[5] and that she failed to notify him of all of the Child's non-emergency medical appointments. The trial court, however, found that there was "no proof that the Mother has been incapable of meeting the Child's needs" and that "[n]o proof was presented that the Mother was medically inappropriate with the Child." We agree. As to Mother's work schedule, Father admitted at trial that because Mother is a nurse, she cannot always be available or answer her phone while she is at work. Likewise, the Child acknowledged that Mother works as a nurse in an emergency room and, therefore, cannot always be available in the middle of the day. While it is unclear how this constitutes an intentional interference with Father's and the Child's relationship, we nevertheless conclude that this does not amount to a material change in circumstances. Likewise, Father's allegation that Mother failed to apprise him of the Child's medical appointments is not supported by the record. At trial, when asked whether he had been made aware of

---

[5] At trial and in his appellate brief, Father referenced an incident in which the Child could not contact Mother at her work when he was sick. The Child then called Father, who picked him up and took him to the doctor, where he was diagnosed with the flu. Father also stated that Mother has not always answered her phone in the middle of the workday when the Child has needed her.

the Child's doctor's appointments, Father responded: "None that were not occurring on my time." However, other than this testimony, which Mother disputed in her deposition testimony,[6] Father offered no further proof to support this allegation. Without more, Father's allegation does not amount to a material change in circumstances. Accordingly, we conclude that the evidence preponderates in favor of the trial court's finding that Mother did not intentionally interfere with Father's relationship with the Child.

The trial court also found that Mother's move from Knox County to Roane County and the Child's subsequent enrollment in a new high school did not amount to a material change in circumstances. We agree. Minor parenting disagreements regarding a child's education are not a material change in circumstances. *See Newberry v. Newberry*, No. E2017-00340-COA-R3-CV, 2018 WL 3058285, at \*7 (Tenn. Ct. App. June 20, 2018) ("This Court has held on several previous occasions that the parties' disagreement over schools was not a material change in circumstances sufficient to warrant a change in primary custodial parent."); *see also Massey-Holt v. Holt*, 255 S.W.3d 603, 610 (Tenn. Ct. App. 2007). In *Massey-Holt v. Holt*, this Court was presented with a similar argument. There, a father sought to be named the child's primary residential parent due to the mother's move to a new county and the child's subsequent enrollment at a new school. *Massey-Holt*, 255 S.W.3d at 610. As to the father's contentions, we ruled as follows:

> Nor can we find anything else in the record to suggest that a change of circumstances occurred as regards the relative fitness of the parents. In particular, we reject any suggestion that Mother is guilty of a "failure[] to adhere to the parenting plan" simply because she enrolled Noah at Baker Elementary School. This decision cannot have violated the Permanent Parenting Plan's requirement that educational decisions be made jointly, because Mother's move to Maury County was well within the allowed mileage radius, and the move necessitated the change of school enrollment. If Father's argument regarding joint educational decisions were accepted, it would essentially result in a vast *de facto* tightening of the restrictions on divorced parents' freedom of movement[.]

*Id.* (footnote omitted). Here, because Mother's residence in Roane County is "less than fifty (50) miles from Father's residence[,]" her change in location—and the Child's enrollment at a new school—do not violate the parties' PPP[7] and, likewise, do not amount

---

[6] In her deposition testimony, Mother stated the following:

> Q: Do you know how many times since your divorce was finalized that you actually let him know ahead of time, and that's, let's say, 48 hours or more, and notified [Father] of a doctor's appointment?
> A: There's been several times. I have text messages for that.

[7] The parties' PPP reproduces Tennessee Code Annotated section 36-6-108, which governs the notice to be given in connection with the relocation of a parent. Section 36-6-108 provides, in relevant part,

to a material change in circumstances warranting a change in the primary residential parent. Therefore, because Father failed to establish that a material change of circumstances has occurred, the trial court properly denied Father's Petition. *See Pippin*, 277 S.W.3d at 405 ("[I]f no material change in circumstances has been proven, the trial court 'is not required to make a best interests determination and must deny the request for a change of custody.'") (quoting *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999)).

## B. Evidentiary Issues

We next address Father's argument that the trial court abused its discretion in prohibiting Father's counsel from calling Mother to testify during Father's case-in-chief. As this Court has noted, "[d]ecisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). "Thus, reviewing courts will not disturb these decisions on appeal unless the trial court has abused its discretion." *Id.* (citing *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004); *State v. James*, 81 S.W.3d 751, 760 (Tenn. 2002)). An abuse of discretion will only be found where the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Id.* (citing *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)). "Appellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) (citation omitted).

Here, the trial court based its evidentiary ruling on the language of Tennessee Rule of Civil Procedure 26.02 and Mother's Interrogatory Number 2 to Father. Tennessee Rule of Civil Procedure 26.02 provides, in relevant part, that parties are entitled to obtain discovery regarding any matter "which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including . . . *the identity and location of persons having knowledge of any discoverable matter*." Tenn. R. Civ. P. 26.02(1) (emphasis added). Mother's Interrogatory Number 2 requested the following information: "Please list all witnesses you intend to call at trial, giving their names, addresses, and a short statement of what you expect their testimony to be." Because Father's counsel omitted

---

the following:

> After custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or *more than fifty (50) miles* from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail.

Tenn. Code Ann. § 36-6-108(a) (emphasis added).

Mother from his response, the trial court did not allow Father to call Mother as a witness during his case-in-chief.

While parties are entitled to discover the identities of persons having relevant knowledge of any discoverable matter, this Court has held that parties are *not* entitled to discover the identities of the persons their adversary intends to call as a witness, absent a local rule or court order providing the same. *See Pistole v. Hayes*, No. M2002-00470-COA-R3-CV, 2004 WL 1123528, at *4 (Tenn. Ct. App. Jan. 12, 2004) ("As we have indicated on prior occasion, T.R.C.P. 26.02(1) allows discovery of the identities of individuals having knowledge about the facts of a case; however, it does not require that a party designate its trial witnesses."); *Pettus v. Hurst*, 882 S.W.2d 783, 786 (Tenn. Ct. App. 1993) ("[P]arties are not entitled to discover the identities of the persons their adversary intends to call as witnesses at trial in the absence of a local rule or a court order."); *Reed v. Allen*, 522 S.W.2d 339, 341 (Tenn. Ct. App. 1974) ("[Tennessee Rule of Civil Procedure 26.02] is not understood to require the disclosure of trial plans in respect to identity of persons who will be called as witnesses. Said rule requires only disclosure of 'the identity and location of persons having knowledge of relevant facts.'"). Further, we have discovered no local rule for the Knox County Fourth Circuit Court, nor have we been directed to any by Mother or Father, that governs the time for the pretrial exchange of witness lists.[8] Accordingly, Father's response to Mother's Interrogatory Number 2 complied with Tennessee Rule of Civil Procedure 26.02, and, as a result, Father had no obligation to disclose "all witnesses [he] intend[ed] to call at trial," as requested by Mother. Therefore, we conclude that the trial court abused its discretion by prohibiting Father's counsel from calling Mother as a witness during Father's case-in-chief.

However, while the trial court erred in prohibiting Father's counsel from calling Mother as a witness during his case-in-chief, this Court has also held that the erroneous exclusion of evidence does not require reversal where the substance of the evidence reaches the finder of fact by other means. *See, e.g.*, *Hensley v. Cerza*, No. M2009-01860-COA-R3-CV, 2010 WL 3363655, at *7 (Tenn. Ct. App. Aug. 25, 2010) (the trial court's erroneous exclusion of lay witness testimony did not affect the outcome of the case where the jury heard other testimony that gave them a picture of the excluded testimony); *Tuggle v. Raymond Corp.*, 868 S.W.2d 621, 626 (Tenn. Ct. App. 1992) ("Even if the trial court's exclusion of this evidence was an abuse of discretion, it would be harmless error because the substance of this evidence reached the jury through the admission of [alternative evidence]."); *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn. Ct. App. 1987) (noting that a trial court's erroneous exclusion of competent evidence will not require reversal "if the substance of the excluded evidence got to the jury through another source"); *Strickland v.*

---

[8] Local Rule 23 of the Knox County Fourth Circuit Court, however, does provide that, if requested by any party, "any pending matter may have a trial management conference." Further, the same rule provides that one of the "matters [to be] dealt with" at the trial management conference is the "[d]ate for exchange of binding witness lists[.]" We have found no evidence in the record of this case as to whether or not such a trial management conference occurred.

- 11 -

*Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981) (noting that the excluded witness's testimony was not "of crucial importance" where a considerable portion of the evidence to which the witness would have testified was already admitted by photographs).

While the trial court abused its discretion in denying Father the opportunity to call Mother as his first witness during his case-in-chief, the trial court allowed him to submit Mother's deposition testimony as an exhibit to the record. Additionally, on the second day of trial, the trial court allowed Father's counsel to call Mother as a witness in order to testify about events that occurred since the date her deposition had been taken. Moreover, the trial court stated during the proceedings and in its final order that it had read Mother's deposition and that it had taken her testimony into consideration. As the trial court noted in its final order, the only legal issue of significance was

> whether or not . . . there had been a material change of circumstances since the entry of the Final Judgment of Divorce which was not known or reasonably anticipated at the time of entry of the Final Judgment of Divorce, and which affects the well-being of the Child, or makes the Permanent Parenting Plan no longer in the Child's best interest.

After our review of the record, we conclude that the trial court heard, read, and analyzed all of the competent and relevant evidence needed in order to resolve the issue before it. We are unable to determine how, based on the evidence in this record, the outcome of this case would have been different had Father's counsel been permitted to call Mother as a witness during Father's case-in-chief. *See White*, 21 S.W.3d at 223 ("The erroneous exclusion of evidence will not require reversal of the judgment if the evidence would not have affected the outcome of the trial even if it had been admitted.") Accordingly, we conclude that the trial court's error was harmless.

## C. Attorney's Fees

Mother and Father both request that this Court award them attorney's fees and costs incurred on this appeal. Tennessee Code Annotated section 36-5-103(c) provides that

> [a] prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c). Additionally, Tennessee Code Annotated section 36-5-103(c) authorizes awards of attorney's fees incurred at trial as well as on appeal.

*Henderson v. Henderson*, No. M2013-01879-COA-R3-CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014). "In determining whether an award for attorney's fees is warranted, [this Court] should consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). After our review of the above factors, and in exercising our discretion, we respectfully decline to award either party their attorney's fees on appeal. Having affirmed the trial court's ruling in favor of Mother, we also affirm its failure to award Father any attorney's fees at trial.

## V. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
ARNOLD B. GOLDIN, JUDGE